PETITION OF THE DEPARTMENT OF PUBLIC WELFARE
TO DISPENSE WITH CONSENT TO ADOPTION.

Middlesex.  January 7, 1981. — April 9, 1981.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Adoption,* Dispensing with parent's consent, Visitation rights.  *Due Process of Law,* Adoption.

Where the natural parents of a child agreed that it was in the child's best interest to have his foster parents adopt him and where there was substantial evidence to support a conclusion that adoption was in the child's best interest, the judge did not err in allowing a petition to dispense with parental consent to the adoption under G. L. c. 210, § 3 (*b*).  [378]

There was ample support in the record of a proceeding on a petition by the Department of Public Welfare to dispense with consent to adoption to warrant a conclusion that an adoption plan proposed by the department, which did not call for the natural parents to retain visitation rights with the child, was in the best interest of the child, and the judge did not err, therefore, in declining to order postadoption visitation rights for the parents.  [379-380]

The natural parents of a child were not entitled to postadoption visitation rights under a so called "open adoption" plan on a theory of "least restrictive alternative" where a finding was warranted that such visitation was not in the best interest of the child.  [380]

On appeal from the allowance of a petition to dispense with consent to adoption, the natural parents could not raise the issue of the failure of the Department of Public Welfare to provide services and a service plan for the parents where the parties had agreed that the only issue to be raised at trial concerned postadoption visitation and, therefore, no evidence on the service plan had been introduced at trial.  [381]

This court did not address a claim by natural parents that the judge in a proceeding under G. L. c. 210, § 3 (*b*), erred in refusing to appoint a psychiatrist or psychologist as guardian ad litem where the judge had authorized the guardian ad litem to appoint a psychiatrist to assist in the investigation and the fact that he had not interviewed the parents was irrelevant because the parents had removed their fitness from the issues to be decided at the proceeding.  [381]

PETITION filed in the Probate Court for the county of Middlesex on November 26, 1975.

The case was heard by *Martin, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Linda F. Smith* for the defendants.

*Maureen L. Fox,* Assistant Attorney General, for Department of Public Welfare.

*Jeremy A. Stahlin (R. Susan Dillard* with him) for Boston Children's Service Association.

ABRAMS, J. The natural parents of a minor child appeal from a judgment of the Probate Court permitting the adoption of their child without their consent. G. L. c. 210, § 3 (*b*). The natural parents did not oppose the proposed adoption by the child's foster parents, but urged the judge to grant them postadoption visitation rights under a so called "open adoption" plan. The judge declined to order postadoption visitation rights.[1] The parents appealed from that portion of the judgment, and their application for direct appellate review was granted. We find no error. We affirm the judgment.

The child who is the subject of the c. 210, § 3 (*b*), proceeding was born in 1974. The mother, who had a history of mental illness, was a patient in the psychiatric unit of a hospital at the time of the birth. After the mother and child were released from the hospital, a pediatric nurse visited with the parents eight times to assist the parents in caring for the child. The nurse found that the mother was unable to dress the child, to keep the child clean, to know whether it had been fed, or to learn rudimentary child care. The

---

[1] However, the judge stated in his judgment that "allowance of [the petition of the Department of Public Welfare] is made with the hope and confidence that the eventual adoptive parents will maintain close contact with the . . . Court Clinic to the end that at some appropriate future date, [the child] will be able to enjoy visitation by and with his parents without adverse effect on his sense of security and stability in his permanent home." In his findings the judge stressed that this language was "strictly precatory."

nurse determined the mother was unable to care for the child alone, and the father was not able to help substantially.

Care and protection proceedings were commenced, and the child was placed in a foster home at age thirty-nine days. Thereafter, the parents attended classes at a parent-child center, both as a couple and with the child. The classes were designed to aid the parents in mastering the skills needed to care for the child. The endeavor was not successful, and the nurse at the center concluded that due to the mother's psychiatric condition, the parents were not able to care for the child.

The child has lived with the foster parents for more than six years. During that period, Department of Public Welfare (DPW) social workers attempted to maintain a visitation program between the child and the natural parents. The more recent visits were not successful. See note 4, *infra*. The judge found that, in the care of the foster parents, the child has thrived "physically, emotionally and intellectually." There is considerable evidence that the child has made close emotional ties with the foster parents, and it is the plan of the DPW and the Boston Children's Service Association that the child be adopted by the foster parents. See G. L. c. 210, §§ 1, 6. See also *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 376 Mass. 252, 262 n.2 (1978), and cases cited. The natural parents agree that the adoption is in the child's best interest, and agree to the adoption on the condition that they retain the right to visit with the child after the adoption.

*The c. 210, § 3 (b), judgment.* The only issue raised below concerned the postadoption visitation rights of the natural parents. Accordingly, the parties have stipulated that they offered no evidence at trial on the issue of parental fitness to have custody, "having previously agreed that fitness to have custody of the child was not relevant to the decision of this case." All parties agreed that the plan to have the foster parents adopt the child was in the child's

best interest, and the judge reached the same conclusion. Since there is substantial evidence in the record to support that conclusion, there was no error in the judgment to allow the petition to dispense with parental consent to the child's adoption.

*Postadoption visitation rights.* The natural parents, while willing to assent to the adoption of their child,[2] ask to retain the right to see the child and be informed of the child's welfare under an open adoption plan.[3] However, the determination to be made under G. L. c. 210, § 3 (*b*), is whether it is in the best interest of the child to dispense with "the need for [parental] consent or notice of any petition for adoption of [the] child subsequently sponsored by [the] department or agency." G. L. c. 210, § 3 (*b*), as amended through St. 1978, c. 552, § 36. In determining the best interest of the child in this case, since the issue of parental fitness was waived, the only issue before the court was "the plan proposed by the department . . . initiating the petition." G. L. c. 210, § 3 (*c*). The record amply supports the judge's conclusion that it was in the best interest of the child to terminate the need for parental consent to adoption, and that the plan proposed by the DPW, which did not call for the natural parents to retain visitation rights, was also in the child's best interest.[4] On the view we take of

---

[2] In a c. 210, § 3 (*b*), proceeding, the right of the parents to set conditions upon any subsequent adoption are terminated if the judge finds that the provisions of that chapter are fully satisfied, and makes "specific and particularized findings of fact, which set out the justification for any judicial action taken." *Custody of a Minor (No. 2)*, 378 Mass. 712, 714 (1979).

[3] An open adoption has been defined as one "in which the [natural] parents meet the adoptive parents, participate in the separation and placement process, relinquish all legal, moral, and nurturing rights to the child, but retain the right to continuing contact and to knowledge of the child's whereabouts and welfare." Baran, Pannor & Sorosky, Open Adoption, 21 Soc. Work, 97, 97 (1976).

[4] The judge found that the visits with the natural parents had an adverse effect on the child, and this finding was fully supported by the evidence. The child would hide when the DPW social worker arrived at the foster parents' home to take the child to the visits, wet the bed following the visits,

the c. 210, § 3 (*b*), proceeding in this case, we do not reach the issue whether open adoption is permissible without legislative action.  See G. L. c. 210, §§ 2, 5C, and 6A.

*Other considerations.*  We consider briefly several other arguments raised by the child's natural parents.  They argue that the due process clause entitled them to the "least restrictive alternative" in this case, and claim that the least restrictive alternative is open adoption.[5]  However, in cases dealing with child custody and adoption, "the doctrine of least restrictive alternatives should not be uncritically applied." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 376 Mass. 252, 266 (1978).  This is particularly true where the alternative that is "least restrictive" to the parents may not be in the child's best interest.  While "[t]he paramount consideration [must be] the welfare of the child," *id.,* quoting from *Adoption of a Minor,* 343 Mass. 292, 294 (1961), we have recognized that the "welfare of the child" and the "best interests" standards are flexible, and the weight to be accorded the several con-

_____

and demanded that the visits cease.  The foster parents and the guardian ad litem agreed that visits should not continue.  The guardian ad litem reported that "the unanimous opinion of all the social and mental health professionals who are currently familiar with the situation [is] that visitation between [the child] and [the] natural parents . . . be terminated at the present time.  The primary reason for such cessation of visits is that the visits threaten [the child's] security, [the child's] relationship with [the foster parents], and thus are not in [the child's] best interest."

[5] Although the parents express enthusiastic support for open adoption, we note that this concept has not been universally accepted.  The authors of an article on open adoption caution that "[o]pen adoption is not a panacea and should not be considered a suitable procedure for all birth or adoptive parents."  Baran, Pannor & Sorosky, Open Adoption, 21 Soc. Work 97, 100 (1976).  See note 3, *supra.*  See *In re Catala,* 57 App. Div. 2d 823 (N.Y. 1977) (memorandum decision) ("Nor did the court abuse discretion in declining to hear evidence in favor of so-called open adoption . . . .  Such a relationship could not but confuse the child and result in harm rather than good"); *In re Erik Vaughn D.,* 70 App. Div. 2d 800 (N.Y. 1979) (memorandum decision) (Kupferman, J., dissenting in part) ("A bifurcated relationship would only confuse matters").  See generally J. Goldstein, A. Freud & A. Solnit, Beyond the Best Interests of the Child (2d ed. 1979); J. Goldstein, A. Freud & A. Solnit, Before the Best Interests of the Child (1979).

siderations under those tests will vary with the circumstances. See *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption,* 367 Mass. 631, 644, 646 (1975). Viewed in this light the determination of the Probate Court judge is consistent with the child's best interest, and thus is not erroneous.

The parents also argue that the DPW failed to provide services and a service plan for the parents, see 106 Code Mass. Regs. 234.050 (1978). Since the parties agreed that the only issue to be raised at trial concerned postadoption visitation, evidence on the service plan was not introduced at trial. Therefore that issue was not considered by the Probate Court judge, and it is not properly before us. See *Baker* v. *Commercial Union Ins. Co.,* 382 Mass. 347, 349 n.5 (1981); *Kagan* v. *Levenson,* 334 Mass. 100, 106 (1956). The parents have not sought to be relieved of their agreement, and the record does not indicate any basis for us to order the stipulation "discharged as not conducive to justice." *Fall River Trust Co.* v. *B.G. Browdy, Inc.,* 346 Mass. 614, 617 (1964).

Finally, the parents argue that it was error for the judge not to grant their request to appoint a psychiatrist or psychologist as guardian ad litem to investigate the issues in the case. The judge appointed a guardian ad litem and authorized the guardian to appoint a psychiatrist to assist in the investigation. The psychiatrist reviewed all the papers and observed the child and the foster parents. The natural parents object to the fact that he did not meet with them, claiming that, unless the parents are observed by a mental health professional, the investigation is not complete. Since the parents removed their fitness from the issues to be decided at the c. 210, § 3 (*b*), proceeding, this claim need not be addressed.

*Judgment affirmed.*