PETITION OF THE DEPARTMENT OF SOCIAL SERVICES TO
DISPENSE WITH CONSENT TO ADOPTION.

Hampden. December 5, 1983. — February 9, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Adoption*, Dispensing with parent's consent.

In a proceeding brought by the Department of Social Services to dispense
with a father's consent to the adoption of his daughter, findings by the
judge that from the age of two weeks the daughter had lived in a foster
home, that she had had no contact with her father during this time,
and that separation of the daughter from her foster parents would be a
traumatic experience for her were insufficient to support his conclu-
sion that the father was unfit and that it was in the daughter's best in-
terest to allow her adoption without the father's consent. [116-121]

PETITION filed in the Probate Court for the county of
Hampden on September 29, 1977.

The case was heard by *Sacco, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*J. Arthur Hickerson* for the father.

*Judith S. Yogman*, Assistant Attorney General, for
Department of Social Services.

LIACOS, J. On September 14, 1981, a judge of the Pro-
bate and Family Court Department entered a decree allow-
ing the petition of the Department of Social Services (de-
partment) to dispense with the need for parental consent for
the adoption of a minor child. See G. L. c. 210, § 3. The
father appealed this decree to the Appeals Court. On the
motion of the department, the Appeals Court remanded the
case to the Probate Court for further findings of fact. See
*Santosky* v. *Kramer*, 455 U.S. 745 (1982). Cf. *Custody of a
Minor*, 389 Mass. 755, 766 (1983) (under *Santosky*, "[e]vi-

dence that is at least 'clear and convincing' is constitutionally required for a finding of parental unfitness"). After further hearing, the judge issued further findings of fact and conclusions of law on November 30, 1982. He stated that it was his judgment that it had been clearly and convincingly shown that the father was unfit and that the best interests of the child would be served by allowing the department's petition. The father pressed his appeal before the Appeals Court, which concluded that it was error for the judge to have allowed the department's petition on the state of the record before him. It vacated the decree and remanded the case once again to the Probate Court for further findings on the effects of physical custody of the child remaining in the foster parents without a final decree of adoption, and whether present or future visitation by the father would contribute to the future welfare and best interests of the child. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 16 Mass. App. Ct. 607, 608, 613 (1983). We granted the department's application for further appellate review. We conclude that on the findings of fact and conclusions of law made by the Probate Court judge it was error for him to allow the department's petition. We vacate the decree and remand the case for entry of further orders consistent with this opinion.

We summarize the facts. The child was born on October 23, 1974. Her mother and father, though living together at the time, were not married.[1] The child is black, as are both

---

[1] The Probate Court judge found that the paternity of the child has never been established, that the child's birth record contains the name of no father, and that at one time a man other than the appellant was alleged to be the father. The department cites this finding in its brief before us and states further that no blood test was ever done and that the appellant did not live with the mother at the time the child was conceived. In one of the hearings in the Probate Court, however, the department stated that if the appellant was willing to claim that he is the father the department was willing to deal with him as the father. Where paternity is acknowledged, the claimant father has standing to appear in the Probate Court to enforce his rights as to the child. *Normand* v. *Barkei*, 385 Mass. 851, 853 (1982). See G. L. c. 210, § 4A. Cf. *Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption*, 385 Mass.

parents.  The child has an older sister who was also living in the household in October, 1974.  Within two weeks of the child's birth, the father returned from work to find that the mother, who was suffering from serious emotional problems at the time, had disappeared[2] and that the child and her sister had been removed from the home by the department. On November 1, 1974, a care and protection petition was filed by the department in Springfield Juvenile Court on behalf of the two children pursuant to G. L. c. 119, § 24. In the course of a court investigation in connection with the care and protection proceeding, the father stated that "he was concerned about his child . . . but felt that since he was a bachelor, living alone, he really wasn't able to care for the child."  After a hearing it was determined that the mother was currently unfit to care for the children.[3]  The children were placed in separate foster homes, and the Juvenile Court subsequently committed them to the legal custody of the department.  The younger child was thirteen days old when she was placed with her foster parents, who are white. She has lived with them ever since.  She regards them as her parents and their family as her family, and they likewise view her as their daughter.  They desire to adopt her, and if parental consent to adoption is dispensed with, the department will support their petition to adopt the child.  Since 1975 the foster family has lived in New Hampshire.

In June, 1975, the father married.  In 1977, with the approval of the department, he and his wife adopted the child's older sister, who had been in two successive foster

---

482, 483 (1982).  See *Commonwealth* v. *Chase,* 385 Mass. 461, 467, 471 (1982).  Cf. G. L. c. 273, § 15.

[2] The mother has apparently been of parts unknown at least since 1977, when the department filed the petition to dispense with parental consent. Her rights are not now before us, as she neither appeared in the proceedings before the Probate Court judge nor filed an appeal from his judgment.

[3] The father was not determined in this Juvenile Court proceeding to be unfit, nor has he been found unfit as a parent in any proceeding other than that which is the subject of the appeal before us.

care placements.  Also, two children have been born of the marriage.  The department does not dispute that the appellant is a fit parent for these three children.

The petition whose allowance is before us was filed in the Probate Court in September, 1977.  In January, 1978, an appearance of counsel on behalf of the father was filed in the Probate Court.  The first hearing on the petition was in 1981.  On January 19, 1981, in the courthouse, the father saw the child for the first time since she was an infant.

We emphasize at the outset the narrow scope of the issue before us.  That issue is simply whether the Probate Court judge erred in allowing the department's petition to dispense with the need for the father's consent to the adoption of the child.  In other words the question is whether any legal rights the father has with respect to this child may be cut off on this record, without his consent.[4]

We note that the father of a child born out of wedlock is not one of the persons named in G. L. c. 210, § 2, without whose consent the child may not be adopted.[5]  At first glance at the scheme of G. L. c. 210, the rights of the father of a child born out of wedlock seem to be protected not by § 2 but rather by the procedure provided for in § 4A, which comes into play only when the unwed mother has consented to adoption or the need for her consent has been dispensed with by decree.  See *Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption, supra* at 486.  As we said in that case, however, § 4A itself contemplates that a father's rights can be adjudicated in a proceeding under § 3.  See *id.*  Here the department itself

---

[4] In *Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption, supra* at 486-487, we held that the equitable powers of the Probate Court are broad enough to allow a probate judge to award physical custody of a child to a father in the context of a G. L. c. 210, § 3, proceeding.  In this case, however, the judge made no order with respect to custody.

[5] In *Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption, supra* at 491-492, we did not reach the issue, argued by the parties, of the constitutionality of the differential treatment under G. L. c. 210, § 2, of unwed fathers and unwed mothers.

391 Mass. 113                    117

Petition of the Department of Social Services to Dispense with Consent to Adoption.

chose to litigate the father's rights by means of a § 3 petition and concedes that without the allowance of this petition the child may not be adopted.

The standard by which a judge is to rule on a petition to dispense with consent is set out in par. (c) of c. 210, § 3, which provides in part: "In determining whether the best interests of the child will be served by issuing a decree dispensing with the need of consent as permitted under paragraph (b), the court shall consider the ability, capacity, fitness and readiness of the child's parents or other person named in section two of chapter two hundred ten to assume parental responsibility, and shall also consider the plan proposed by the department or other agency initiating the petition."[6] In his first set of conclusions of law the probate judge stated: "Given the psychological attachment between this child and her prospective adoptive family . . . a severing of such bond would be seriously detrimental to the present and the future welfare of the child. . . . To separate her from them would be a traumatic experience for the child." He also stated: "Solely on the basis of the length of time which has elapsed with no contact between [the appellant], who claims to be the father, and this child, I would find [the appellant] an unfit parent." After the second hearing in 1982, he further concluded: "Based on the length of time this child has remained in the home of the [foster family], the psychological bonds of love and affection that have developed, the security, care, kindness and understanding

---

[6] Paragraph (c) of the statute further provides: "If said child has been in the care of the department or a licensed child care agency for more than one year, in each case irrespective of incidental communications or visits from his parents or other person named in section two, irrespective of a court decree awarding custody of said child to another and notwithstanding the absence of a court decree ordering said parents or other person to pay for the support of said child there shall be a presumption that the best interests of the child will be served by granting a petition for adoption as permitted under paragraph (a) or by issuing a decree dispensing with the need for consent as permitted under paragraph (b)." We have concluded recently that the statutory presumption is constitutionally infirm. See *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 389 Mass. 793, 802-803 (1983).

that have been afforded this child, to remove her at this time would cause serious mental upset, frustration and damage on the part of the child, and this is clearly and convincingly not in the best interest of the child.[7] [The appellant] has utterly failed to show by affirmative evidence that he did not in effect acquiesce to custody by the Department. . . . [I]t is the judgment of this Court that it was clearly and convincingly shown that said alleged parent, [the appellant], is unfit, and that the best interests of the child will be served by allowing the petition."

We have previously stated that "natural parents may not be deprived of the *custody* of their minor children in the absence of a showing that they 'have grievous shortcomings or handicaps that would put the child's welfare in the family milieu much at hazard,' or 'unless some factor such as lengthy separation and a corresponding growth in the ties between the child and the prospective adoptive parents indicate[s] that the child would be hurt by being returned to the natural parents'" (emphasis supplied). *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption*, 383 Mass. 573, 590 (1981), quoting *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 639, 646 (1975). We have not, however, recognized "a per se rule that prospective adoptive foster parents, who have become a minor child's psychological parents, shall automatically prevail in a custody dispute over a natural parent." *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption, supra* at 591 n.16. In custody disputes "[n]either the

---

[7] Such a finding reinforces our previously expressed concern in *Custody of a Minor*, 389 Mass. 755 (1983). The passage of time since the case before us was initiated in 1977 to the time of hearing and first decision in September, 1981, serves, by itself, to defeat the interests of natural parents and to adversely affect the interests of the child. We repeat what we said in *Custody of a Minor, supra* at 764: "Unless proceedings involving the custody of a minor are expedited, they fail to accomplish their purpose. . . . Prompt resolution of [such] issues is essential." It seems clear on this record that the delay here is more properly attributed to the department, and perhaps the court, than to the father.

'parental fitness' test nor the 'best interests of the child' test is properly applied to the exclusion of the other." *Bezio* v. *Patenaude*, 381 Mass. 563, 576-577 (1980).

In cases such as the present one, however, we believe that it is error to base the allowance of a petition to dispense with parental consent on a finding that the child would be hurt by being returned to the natural parent. If the parent has the ability, capacity, fitness, and readiness to assume parental responsibility, see G. L. c. 210, § 3 (c), we believe that a petition to dispense with consent should be denied.[8] When a child is adopted, "all rights, duties and other legal consequences of the natural relation of child and parent . . . except as regards marriage, incest or cohabitation, terminate between the child so adopted and his natural parents and kindred." G. L. c. 210, § 6. The allowance of a petition to dispense with a parent's consent to his child's adoption means that the parent no longer has the power to prevent the termination of these rights, duties, and other legal consequences of his relation to his child. For this extreme step to be taken, we believe that it must be shown by clear and convincing evidence that the parent's unfitness to assume parental responsibility is such that it would be in the best interests of the child for all legal relations to be ended. Cf. *Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption, supra* at 490; *Custody of a Minor, supra* at 765-766.

The judgment allowing the department's petition in this case was unsupported by adequate findings as to the father's fitness to assume parental responsibility. One ground for the judgment was the finding that the child would be harmed by a transfer of custody to the father. The other was the finding that the father had not shown that he did not acquiesce to custody by the department. In *Bezio* v. *Patenaude, supra,* the guardian contended that the mother's voluntary assent to the guardianship petition con-

---

[8] The problem of the effect on the child can be considered better in the context of determining physical custody of the child.

stituted a waiver of her natural custodial rights. We found this contention without merit, stating that "[t]he appointment of a guardian did not diminish the weight accorded to the natural bond between parent and child." *Id.* at 575. We also stated: "While it is true that 'an assessment of prognostic evidence derived from an ongoing pattern of parental neglect or misconduct is appropriate in the determination of future fitness and the likelihood of harm to the child' (*Custody of a Minor* [*No. 1*], 377 Mass. 876, 883 [1979]), the critical inquiry is 'current parental [fitness]' (*id.*). Mere failure to exercise custodial rights in the past, particularly where a parent has voluntarily relinquished custody 'for appropriate reasons' (*Little Wanderers, supra* at 640), does not support a conclusion that such parent is unfit to further the welfare of the child." *Bezio, supra* at 577. This statement, made in *Bezio* in the context of a custody dispute, applies even more strongly where, as here, not custody but rather the termination of all legal relations is at issue.

The department argues that this case is distinguishable from *Bezio* in that after his marriage in 1975 the father in this case had no "appropriate reasons" not to press for custody of the child. It contends that the father has walked in and out of the child's life when it has suited his own convenience, causing great disruption for the child. According to the department, this history shows that the father is unfit because of his lack of concern for the best interests of the child. The father, on the other hand, contends that he has tried continually since 1974 to establish contact with his daughter. He claims that his efforts have been frustrated by the inaction of the department's bureaucracy and of his own attorneys, and by the slowness of the courts.

In his first set of findings the judge found that from November 5, 1974, until January 19, 1981, the father was not permitted by the department to see or have any contact with the child. In his second set of findings the judge stated: "I find the evidence very compelling that [the appellant] never made a concerted effort to seek or obtain

custody of this child before 1979. He indicated that his grounds for not pursuing custody and visitation consistently were that he had left it to his attorneys." After noting that the child had medical problems as an infant, the judge also stated: "This corresponds to what [the appellant] used as a reason for not pursuing custody in 1975. 'She (social worker) told me, well in [the child's] case, she was a sickly child, she'd be better off where she is.' [The appellant] does not indicate that he made an issue of seeing the sickly child or inquiring as to her illness or her whereabouts. Even after the Department filed this petition on September 29, 1977, [the appellant] never clearly asserted a right or wish to have [the child's] custody until months after the petition was filed. He did not clearly assert his rights until the hearing on this petition in 1981."

Even assuming, as the department argues, that the judge's original finding that the department prevented the father from seeing his child was superseded by his later findings, we do not think that those later findings are an adequate basis for the allowance of the department's petition. In reaching his conclusion of the father's unfitness, the judge appears to have relied on a theory of waiver of the type which we rejected in *Bezio*. A finding that the father had failed to pursue his rights with regard to this child could be the basis for a decree dispensing with his consent to the child's adoption only if the judge found that such failure indicated that the father was currently unfit to assume parental responsibility and that consequently it would be in the child's best interests for the father's legal rights to be terminated.

Although the judge expressly made the required conclusion of unfitness, his findings, as discussed, do not support that conclusion. Accordingly, the decree is vacated. The case is remanded to the Probate Court for further proceedings. On proper petition by the father, the judge may enter such orders as to visitation or physical or legal custody as may be appropriate, with a view toward ultimately returning legal, as well as physical, custody of the child to her

father.    See note 4, *supra.*    Whether further evidence is necessary is to be determined by the probate judge.    He is, of course, authorized to consider the best interests of the child in regard to the method and the timing of such a transfer.

*So ordered.*