PETITION OF THE DEPARTMENT OF SOCIAL SERVICES
TO DISPENSE WITH CONSENT TO ADOPTION.

Middlesex.    April 5, 1984. — August 13, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Adoption,* Dispensing with parent's consent, Visitation rights.

On appeal from a decree pursuant to G. L. c. 210, § 3, dispensing with the
    need for a mother's consent to the adoption of her child, this court
    declined to adopt the standard of proof beyond a reasonable doubt for
    the purpose of determining parental unfitness. [697-700]
In a proceeding to dispense with the need for a mother's consent to the adop-
    tion of her child, the judge was warranted in determining that the Depart-
    ment of Social Services had demonstrated by clear and convincing evi-
    dence that the mother was currently unfit to provide for the best interests
    of the child and, the judge's findings being sufficiently directed to the
    question of the mother's fitness, his determination was not dependent
    on improper considerations. [700-702]

PETITION filed in the Middlesex Division of the Probate and
Family Court Department on March 16, 1979.

The case was heard by *Leahy, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Patricia A. Lynch (Albert DeNapoli* with her) for the mother.

*Kim E. Murdock,* Assistant Attorney General, for Depart-
ment of Social Services.

WILKINS, J. In her application for further appellate review
following an order of the Appeals Court affirming by summary
disposition a decree pursuant to G. L. c. 210, § 3, dispensing
with the need for her consent to the adoption of her child, the
mother urged, for the first time, that, under arts. 1 and 10 of
the Declaration of Rights of the Constitution of the Common-
wealth, any finding of her unfitness as a parent must be sup-
ported by proof beyond a reasonable doubt. A judge of the Pro-

bate and Family Court had found that the mother was unfit, using the standard of clear and convincing evidence required under *Santosky* v. *Kramer,* 455 U.S. 745 (1982). Although the issue is not properly before us, we discuss it and conclude that we should not adopt the standard of proof beyond a reasonable doubt for the purpose of determining parental fitness in cases involving petitions to dispense with consent to adoption. We agree with the Appeals Court that the judge's findings, applying the standard of clear and convincing evidence, were warranted and were not dependent on improper considerations.

1. As a general practice we do not consider issues, particularly constitutional questions, raised for the first time in this court. See *New England Merchants Nat'l Bank* v. *Groswold,* 387 Mass. 822, 825 n.5 (1983); *M.H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n,* 386 Mass. 64, 67 (1982). "Although it is within our power to do so, we would not, barring exceptional circumstances, expect to address an issue not already raised in a case at the time we grant further appellate review." *Phillips* v. *Youth Dev. Program, Inc.,* 390 Mass. 652, 660 (1983). We have shown similar restraint as to constitutional issues in cases that are moot. See *Lockhart* v. *Attorney Gen.,* 390 Mass. 780, 784 (1984).

The Appeals Court remanded the case to the trial judge to make findings in light of *Santosky* v. *Kramer, supra* (see *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 14 Mass. App. Ct. 1302 [1982] [summary disposition]), and thereafter the mother filed a brief in the Appeals Court in which she did not argue that the clear and convincing evidence standard was not the appropriate one, but only that it had not been met. As we have said, only when the mother sought further appellate review did she raise the issue.

Although, for these reasons, the mother does not present a strong case on her own behalf that we should decide the question whether a higher standard than the clear and convincing evidence standard should be applied, we should put the question to rest, as far as we can, because of its importance in numerous pending and future cases of the same kind. In *Custody of a Minor (No. 1),* 377 Mass. 876, 877, 884 (1979), we discussed a

mother's contention that a clear and convincing standard of proof should be adopted, even though in that case, also, the issue was raised on appeal for the first time. In that child custody ("care and protection" under G. L. c. 119, § 24) case, it was our view that we should adopt neither the standard of proof beyond a reasonable doubt nor the standard of proof by "clear and convincing" evidence. *Custody of a Minor (No. 1), supra* at 885-886. We were fully cognizant of the burden that a custody proceeding places on family integrity and recognized that a determination to deny custody to a parent deserved "added judicial attention." *Id.* at 885. We imposed the requirement that "the judge enter specific and detailed findings demonstrating that close attention has been given the evidence and that the necessity of removing the child from his or her parents has been persuasively shown." *Id.* at 886.

In cases involving the termination of parental rights, which is the effect of granting a petition under G. L. c. 210, § 3, to dispense with parental consent to adoption, due process of law under the Constitution of the United States requires that the State prove its case by clear and convincing evidence. *Santosky* v. *Kramer,* 455 U.S. 745 (1982). We, of course, must apply this standard of proof to termination proceedings, and the judge undertook to do so in this case. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 391 Mass. 113, 119 (1984). In the *Santosky* case, the Supreme Court indicated that the higher reasonable doubt standard need not be used to satisfy Federal due process of law requirements and left the question of any higher standard of proof to the States. *Santosky* v. *Kramer, supra* at 768-770.[1]

---

[1] Although there are differences between the statutory standards applicable to custody proceedings and to termination proceedings (see *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 391 Mass. 113, 118-119 [1984]), and although the interests of the child, the parents, and the State in the two proceedings are perhaps sufficiently different to justify the use of different standards of proof in the two situations, in this Commonwealth the standard of proof in custody cases, as well as in termination cases, has been proof by clear and convincing evidence (see *Custody of a Minor,* 389 Mass. 755, 766-767 [1983], and cases cited). It could be reasonably argued, however, that the standard of proof required by the

We decline to apply the reasonable doubt standard to proceedings involving the question whether to dispense with parental consent to adoption. We have applied that standard to certain civil proceedings in which the individual's interests were pitted directly against the State and the interests of no third person were directly implicated. See *Guardianship of Roe,* 383 Mass. 415, 451 (1981) (proof of need for involuntary administration of antipsychotic medication to noninstitutionalized incompetent persons must be made beyond a reasonable doubt); *Superintendent of Worcester State Hosp.* v. *Hagberg,* 374 Mass. 271, 275-277 (1978) (in proceeding involving commitment to mental health facility, the standard of proof, as a matter of State law, is "proof beyond a reasonable doubt"; *Andrews, petitioner,* 368 Mass. 468, 486-491 (1975) (same as to an order granting a petition that a person be adjudicated a sexually dangerous person and committed as such).[2] Cf. *Spence* v. *Gormley,* 387 Mass. 258, 273-277 (1982) (preponderance of the evidence standard is constitutionally adequate in proceedings to evict tenants from public housing). A proceeding involving custody or the dispensing with the need for parental consent to adoption involves the welfare of the child. See *Custody of a Minor (No. 2),* 378 Mass. 712, 721 (1979); *Custody of a Minor (No. 1),* 377 Mass. 876, 885-886 (1979); *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 376 Mass. 252, 265-266 (1978). The Commonwealth intervenes to protect the basic rights of the child, not to protect its own interests or that of society at large. *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 573, 591-592 (1981). In the balancing of interests that affect the choice of a burden of proof, the child's rights to safety, security, and sta-

---

*Santosky* case must be applied in termination cases but need not be in custody cases. See *People in the Interest of O.E.P.,* 654 P.2d 312, 315-317 (Colo. 1982); *In re Juvenile Appeal,* 189 Conn. 276, 296-300 (1983); *In re Sabrina M.,* 460 A.2d 1009, 1015-1017 (Me. 1983).

[2] In the year after our *Hagberg* decision, the Supreme Court of the United States established, as a matter of due process of law, the requirement that proof in a civil commitment proceeding need only be by "clear and convincing" evidence. *Addington* v. *Texas,* 441 U.S. 418, 433 (1979).

bility are entitled to special respect. See *Custody of a Minor,* 389 Mass. 755, 768 (1983). After a point, a child's interests are not necessarily the same as his or her parents' interests and the selection of a heavy burden of proof, favorable to the parents' interests, could only be made at the expense of placing "almost the entire risk of error" (*Addington* v. *Texas,* 441 U.S. 418, 424 [1979]) on the child. We decline to impose a higher burden of proof than proof by clear and convincing evidence in proceedings requesting that parental consent to adoption be dispensed with.

2. We have reviewed the record and conclude that there was clear and convincing evidence to warrant the judge's conclusion that the mother was then currently unfit to provide for the best interests of the child. See *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 389 Mass. 793, 799-800 (1983). Much of the mother's argument in effect seeks to relitigate the factual disputes that were resolved by the judge's decision. When we determine that the evidence warrants a judge's conclusion, our function in assessing the evidence is concluded.

The mother also contends that the judge impermissibly relied on certain facts in reaching his conclusion. We consider each of these claims. We have recently said that "it is error to base the allowance of a petition to dispense with parental consent on a finding that the child would be hurt by being returned to the natural parent." *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption,* 391 Mass. 113, 119 (1984). The potential effect of the judge's decision on the child is not irrelevant, but any adverse impact on a child from being returned to his or her parent cannot alone support a decision to dispense with consent to adoption. The judge's decision was not based significantly on a finding of the likelihood of an adverse impact on the child if she were to be taken from her foster home. The judge's findings focused principally on the mother's fitness — her capacity to assume parental responsibility.

The judge took note of various expert opinions that the mother suffered from "severe borderline personality organiza-

tion," and added that the experts and the guardian ad litem concluded that the mother was unfit to care for her child. We have said that "[i]t is not enough to state that [a parent] suffers from a mental disorder." *Custody of a Minor (No. 2)*, 378 Mass. 712, 722 (1979). For the mental disorder to be relevant, there must be a showing that it has a bearing on the parent's fitness or on the child's well-being. Here, the judge made an explicit finding that the mother "can become psychotic under stress, unable to distinguish fantasy from reality." This finding adequately related the mother's mental condition to her fitness to care for the child.

In deciding the fitness issue, the judge was entitled to consider the reasons for certain voluntary placements of the child in foster care and their duration to the extent those factors were reasonably within the mother's control. The judge may have improperly relied on temporary placements of the child required by physical problems over which the mother had no control (which would not warrant a finding of unfitness) in the same way he properly relied on one long placement due primarily to the mother's emotional problems. The former placements were for brief periods, and, in view of the other evidence, if the judge did improperly rely on those placements, his reliance was minimal and, we conclude, would not have affected the result. He noted that the mother failed to cooperate with counseling and treatment, but we do not see that he relied on the mother's failure to get along with an employee of the Department of Social Services assigned to her case, except as the reasons for that disagreement were founded on the mother's inability to take appropriate steps to be able to care for her child.

Where a judge makes a finding of fact which is irrelevant to a finding of unfitness, the judge should be careful to indicate in his findings that any conclusion of unfitness is not based on that fact. It is appropriate, to present the complete picture, for a judge to find various facts that would not play a part in a finding of unfitness, but the judge's analysis of the facts should show that he did not rely on irrelevant ones. Of course, a fact insufficient by itself may be combined with other facts to produce an adequate ground for a conclusion of unfitness. For

example, normally a parent's life-style or personal beliefs and values could not alone be the basis for a finding of unfitness. To be worthy of consideration, a parent's life-style or personal beliefs and values must be shown to have an impact on the ultimate questions of fitness and of the best interests of the child. The judge's findings in this case were sufficiently directed to the question of the mother's fitness, and free from the imposition of his personal beliefs, so as to be free from this kind of error.

We affirm the decree dispensing with the need for the mother's consent to adoption but add a comment on the matter of visitation by the mother. The Appeals Court, in its unpublished order, noted that the parties did not discuss the issue and, thus, it did not consider whether "limited post-adoption visitation for the benefit of the child may be ordered." There was evidence that the child would benefit from such visits, and during trial the mother raised the question of visitation. In her supplemental brief in this court, filed after we granted further appellate review, the mother urges us to remand the case for entry of orders of visitation. The question whether G. L. c. 210, § 3, allows a judge to provide for postadoptive visitation by members of the child's natural family was explicitly reserved in *Petition of the Dep't of Pub. Welfare to Dispense with Consent to Adoption,* 383 Mass. 376, 379-380 & nn. 3, 5 (1981). Under a previous version of G. L. c. 210, § 2, we ruled that a natural parent could condition consent to an adoption on a reservation of visitation rights. *Adoption of a Minor,* 362 Mass. 842, 845-846 (1973). Given the "broad, equitable powers" of courts in this area (*Petition of the New Bedford Child & Family Serv. to Dispense with Consent to Adoption,* 385 Mass. 482, 487 [1982]), we see no reason why a judge dealing with a petition to dispense with parental consent may not evaluate "the plan proposed by the department" (G. L. c. 210, § 3 [c]) in relation to all the elements the judge finds are in the child's best interests, including parental visitation.

In his findings after remand from the Appeals Court, the judge found that a visit at that time would be "too disruptive to

the child." We do not know what "the plan proposed by the department" for this child contains, but we assume it does not contemplate visitation by the mother. Although we affirm the decree, the rescript shall provide that the trial judge may in his discretion consider any petition that the plan proposed by the department be amended to provide for rights of visitation, provided that such a petition is filed within thirty days of the docketing of the rescript in the trial court.

*So ordered.*