Lenhoff, J.
This Report results from an order of civil commitment fo a Department of MentalHealth facility made on June 23,1986 pursuant to G. L. c. 123, §§ 7 and 8.
(Hereinafter the appellant shall be referred to as the respondent and the appellee as the petitioner.)
The evidence[1] consisted of the testimony of the petitioner’s sole witness, a psychiatrist, plus the respondent’s medical records. The respondent was described as mute and disinterested in his immediate environment while hospitalized at the Northampton State Hospital with periods of lying in bed staring at the ceiling in apparent bewilderment. Such hospitalization was his sixth admission to this facility.
On June 1, 1986, the respondent was observed lying in bed with his eye bleeding and his fingernails on both hands were encrusted with blood. Treatment for this emergency condition was treated at a Northampton medical hospital while he was in a psychotic state and totally unaware of his surroundings. On the next day he was seen tearing off his eye bandage, forcing him to be restrained to prevent further damage to his person.
Prior to June 6,1986, the respondent had to be mostly spoon fed. However, *4 on that date he did eat about one-third of his meal and had to have the balance fed by spoon.
On June 17, 1986, the respondent ate breakfast and lunch, having been feces incontinent overnight. He has diabetes and must maintain a strict dietary regimen. He is described as being catatonic. At his hearing, he did not speak; and, during the cross-examination of the psychiatrist, he got up and left the hearing. Occasionally, he makes unconnected statements such as “Fire in the Hold”, and he does not respond to questions.
Further, the psychiatrist opined that the respondent lacks the ability to care for himself, including the inability to understand the need for dietary restrictions to stabilize his diabetic condition; and, that he cannot care for himself in a less restrictive placement.
The foregoing stated opinion of the psychiatrist was made with his knowledge that the respondent, at the time of his most recent admission to the Northampton State Hospital, was a resident in a staffed Department of Mental Health residence in North Adams, Massachusetts. Also, said psychiatrist did not contact the North Adams facility to determine if they would accept or receive the respondent. However, said opinion that there is no less restrictive alternative to the Northampton State Hospital resulted by reason of his knowledge of the acuteness of the respondent’s illness implemented by his discussion with other professionals.
At the close of the petitioner’s case, the respondent orally moved to dismiss the Petition, claiming a failure to prove that “reasonable provision for-(the respondent’s) protection is not available in the community. G.L. c. 123, § 1(3). The Trial Court denied this motion.
Further, the respondent filed three (3) Requests for Rulings of Law.[2] All were denied.
The Trial Court, after hearing and consideration of the above, concluded that (1) the respondent is mentally ill, suffering from a psychotic mental disorder diagnosed as catatonic schizophrenia; (2) failure to retain the respondent in a facility would create a likelihood of serious harm to himself; and (3) there is no less restrictive alternative to the Northampton State Hospital available.
In consequence of said conclusions, the Trial Court ordered the respondent committed to the Northampton State Hospital for a period of six (6) months.
Thereafter, the respondent moved for additional findings of fact. The Trial Court did make additional findings of fact, including the conclusions hereinbefore set forth. Said Trial Court also changed its denial of respondent’s Requests numbered 1 and 2 and allowed same, sua sponte. However, the respondent’s Request for Ruling No. 3 remained denied.
The respondent, being aggrieved by the denial of its Request No. 3, reported its grievance to this Appellate Division for determination.
It is anticipated that by the time this opinion is certified, the six (6) month commitment will have expired. Regardless of the fact that this case has raised *5 a question that probably will be moot; we, nevertheless, proceed to decide same in the light of Guardianship of Doe, 391 Mass. 614, 618-619 (1984) where our Supreme Judicial Court stated: —
“-issues which involve the rights of the mentally ill are classic examples of issues that are ‘capable of repetition, yet evading review.’ ”
Cited therein is the case of Hashimi v. Kalil, 388 Mass. 607, 609 (1983) which was decided notwithstanding it being moot due to the public importance of the question raised, in order to settle the law applicable thereto.
To assist this body to determine the presented grievance, we recognize that we possess power to draw reasonable inferences from the basic facts found, and such inferences are open for our decision. See Simons v. Weymouth Agr. & Industrial Soc., 389 Mass. 146, 148(1983). We also take cognizance that the findings of fact of the Trial Court will not be set aside unless they are “clearly erroneous”. Additionally, we note that though evidence may be present to support afinding made, it can nevertheless be considered “clearly erroneous” if it leaves the Appellate Court, on the entire evidence, with a definite and firm conviction that a mistake has been committed. See Marlow v. New Bedford, 369 Mass. 501, 508 (1976). Further, it is our statutory responsibility “to render decision according to the justice of the case”. See G.L. c. 231, § 110. Though Dist./Mun. Cts. R. Civ. P., Rule 52(a) gives discretionary power to the Trial Court to articulate the essential grounds of its decision, its articulation, as is the case here, enables the involved parties and the Appellate Division to be fully informed of the basis for decision. See Schrottman v. Barnicle, 386 Mass. 2627, 638-639 (1982).
Directing our attention to the denied request, we now make an analysis of the verbiage contained therein. The request consists of language that presupposes that certain facts were found. A part thereof states:
“Where respondent in a civil commitment proceeding has entered the hospital from a Department of Mental Health-funded community alternative to institutionalization-.”
This particular part is a generalization, placing all persons in a Department of Mental Health-funded community facility as an alternative placement to hospitalization. Whether this be an actuality in all cases, as the statement indicates, is highly questionable. This is especially true in the light of no facts having been found as was presupposed. There also is a question of fact raised by implication or inference as to whether a respondent, in a civil commitment proceeding, is treated differently when entering a hospital from a situation or in circumstances other than from a Department of Mental Health-funded facility. In either case, there is no evidence to establish the fact sought here to be treated as if same had been found and firmly fixed. The grieved request continues by setting forth: —
“-the hospital’s duty to seek alternatives to institutionalization includes at a minimum some timely and meaningful dialogue between hospital staff and community program staff regarding the feasibility of return to that community program.”
This portion of the request seeks to set up mechanics as to the way, manner or means to be pursued by the petitioner in carrying out its alleged duty to seek alternatives to institutionalization. The word “institutionalization” as employed in the respondent’s grieved request .itself is vague, uncertain and indefinite, for both a hospital or a Department of Mental Health-funded community residence may be considered by some individuals to be in the *6 same category. Such request’s intent appears to nullify the Trial Court’s province to find facts on the produced evidence by setting up a procedure not dictated by any known or established law.
For the reasons stated above, we hold the concerned Request to be patently defective, and rule that the Trial Court ruled correctly in its disposition thereof.
Although the matter aggrieved has been determined, we do face the fact that we should and will consider whether, on all the evidence, the decision of the Trial Court was correct, to the end that a decision be rendered “according to the justice of the case”. G.L. c. 231, § 110.
G. L. c. 123, § 7 enables the superintendent of a facility to petition the District Court for commitment to said facility of any patient thereat who is determined that failure to so hospitalize would create a likelihood of serious harm.
As per G. L. c. 123, § 1 captioned “Definitions”, we find the words “likelihood of serious harm”, defined under (3) thereof, as follows: —
“a very substantial risk of physical-injury to the person himself as manifested by evidence that such person’s judgment is so affected that he is unable to protect himself in the community and that reasonable provision for his protection is not available in the community.”
Our attention is directed to the pertinent provision applying to the facts of this matter found in the Standards of Judicial Practice in Civil Commitment, District Court Department of the Trial Court, Standard 1:02: —

“Requirement for Commitment

A person cannot be committed to a facility unless the evidence establishes (1) that the person is ill, and (2) that failure to retain such person in a facility would create a likelihood of serious harm, and (3) that there is no less restrictive alternative for such person.”
The standard of proof now required in this Commonwealth to establish (1) mental illness; (2)that failure to retain such person in a facility would create a likelihood of serious harm; and, (3) that there is no less restrictive alternative for such person, is proof beyond a reasonable doubt. See Petition of Department of Social Services to Dispense with Consent to Adoption, 392 Mass. 696, 699 (1984); Comm. v. Nassar, 380 Mass. 908, 916 (1980); Superintendent of Worcester State Hospital v. Hagberg, 374 Mass. 271, 276-277 (1978).
There is no question that the facts as found by the Trial Court are a sufficient basis to justify its concluding that the respondent is mentally ill. Evidence is also present manifesting that the respondent’s judgment is so affected that he is unable to protect himself. Therefore, the sole remaining aspect for our resolution in order to arrive at an ultimate decision is to determine whether failure to hospitalize the respondent would create a likelihood of serious harm and whether “reasonable provision for his protection is not available in the community”. Stated in another way, before committing anyone to a hospital, the Trial Court should and must be convinced, beyond a reasonable doubt, that no less restrictive alternate exists to take priority. See Gallup v. Alden, 57 Mass. App. Dec. 41, 57-60 (1975); Note 265 in Harvard Law Review, Vol. 87:1190, at pgs. 1250-1251 (1974).
Here, the Trial Court did find as an ultimate fact or conclusion that there is no less restrictive alternate to the Northampton State Hospital available. A thorough examination of the stated facts disclose that the only testimonial evidence upon which such fact or conclusion was based is the stated opinion *7 of the psychiatrist “that the respondent could not care for himself in a less restrictive placement”.
The respondent urges that the petitioner has the burden of proof to establish that no less restrictive alternative is available; that this signifies factual proof, and is “explicitly mandated” to be presented; and, that the judgment ofthe psychiatrist that one “could or could not care for himself in a less restrictive placement”, was not intended by our General Court as proof. In furtherance thereof, the respondent’s brief states: —
“-it is often repeated that expert testimony is only appropriate where the issues cannot easily be comprehended without expertise.”
The respondent cites various cases to buttress his position, finally pointing out that expert opinion must be based on either personal knowledge of the expert or evidence already presented or to be presented during the hearing, or a combination thereof.
The contentions of the respondent regarding the testimony of the psychiatrist appear to be dealt with authoritatively and finally by a recent Supreme Judicial Court decision rendered subsequent to the submission by the respondent of its brief. Said decision is Department of Youth Services v. A Juvenile, 398 Mass. 516, dated November 4, 1986. On pgs. 527-532, inclusive, there is a full and complete discussion of expert testimony, Proposed Mass. Evidence Rule 703 and Federal Rule 703, all regarding same. Suffice it to state, the law of the Commonwealth permits an expert to base an opinion on facts and data not in evidence, if the facts and data are independently admissible. At p. 532 of Department of Youth Services v. A Juvenile, supra, the Court said: —
“If a party believes that an expert is basing an opinion on inadmissible facts or data, the party may request a voir dire to determine the basis ofthe expert opinion. If the facts or data are admissible and of the sort that experts in that specialty reasonably rely in forming their opinion, then the expert may state that opinion without the facts or data being admitted in evidence.”
Also, in said case of Department of Youth Services v. A Juvenile, supra, at p. 529, we find the following quotation: —
‘The way to combat such evidence is by cross-examination, not claiming foul.”
See Knightsbridge Mktg. Servs., Inc. v. Promociones Y Proyectas, 728 F. 2d 572, 576 (1st Cir. 1984).
In the case at bar, the Trial Court had to weight the opinion of the psychiatrist who testified from personal observations of the respondent and with assumed full and complete knowledge of his medical history revealed by his records. It can properly be inferred, implied or assumed that one concerned with a mental hospital, as is a psychiatrist, is educated and well read in all pertinent particulars of the case and treatment of the mentally ill. Such person undoubtedly had access to statistics, facts and data compiled by on-the-scene observers who investigated all areas of the Commonwealth’s mental health facilities, including those termed as less restrictive alternative operations. That the on-the-scene observers would be able to testily regarding their observations is obvious. Hence, a person regarded as an expert in the mental health field could be permitted to state his opinion, he possessing a background involving the foregoing. Of course, the respondent would be free to challenge such opinion by cross-examination plus presenting contrary-testifying witnesses, to assist the Trial Court in its determination.
*8 In the instant matter, the psychiatrist was stated by the respondent’s counsel to have testified that he didn’t know anything about the available facilities in North Adams. Whether further inquiry of such alleged testimony would change or alter the apparent sense thereof cannot be determined, for the statement, standing alone, may reflect personal knowledge as differentiated from knowledge obtained from another. Notwithstanding that the sense of the statement is questionable and assuming counsel’s statement be correct without qualification, the psychiatrist’s solidly-held opinion that only hospitalization was required or warranted to the exclusion of any and all other considerations, is not negated. Such opinion, in view of the evidence that the respondent was admitted to the Northampton State Hospital from a Department of Mental Health residence facility in North Adams, can be accorded much merit, and such apparently was the case.
It is further pointed out that all the circumstances, including inferences not too remote according to the usual course of events, can be of sufficient force to bring one of ordinary intelligence and sagacity to the persuasion beyond a reasonable doubt. See Comm. v. Latimore, 378 Mass. 671, 676 (1979). Additionally, though a duty normally may be applicable, its abandonment has been held justified when reasonable in the circumstances. See Adoption of Abigail, 23 Mass. App. Ct., 191, 197 (1986).
The Trial Court reasonably and correctly concluded that the respondent’s condition required a facility such as the Northampton State Hospital and that there was no less restrictive alternative placement to properly attend to his necessary needs. The respondent’s condition, his actions and inactions, the required constant care and attention needed, and the knowledgeable opinion of one expert in the mental health field, all combined to establish and prove that the commitment made was in order. These cumulative circumstances, and the reasonable inferences to be drawn therefrom, demonstrate that afirm foundation was constructed as the basis on which the Trial Court was persuaded beyond a reasonable doubt to ultimately decide as it did.
Consequently, we hold the commitment to be just and proper; and, there being no prejudicial error; the Report, be and is hereby dismissed.

 The Report set forth evidence that was supplemented by pertinent Trial Court findings which is included herein to enable the Appellate Division to properly consider the issue or issues involved. See Olafson v.Kilgallon, 362 Mass. 802, 804-805 C1973).

 1. Mere eonclusory allegation by the state hospital’s psychiatrist that "nothing less would be sufficient,” or words to that effect, does not meet the Commonwealth’s burden of proving beyond a reasonable doubt that “reasonable provision for... [the respondent’s] protection is not available in the community," pursuant to M.G.L. c. 123, § 1.
2. Proof beyond a reasonable doubt that “reasonable provision for. . .[the respondent’s] protection is not available in the community” is part of the Commonwealth’s prima facie case in a petition for commitment like the present one. M.G.L. c. 123, § 1(3).
3. Where respondent in a civil commitment proceeding has entered the hospital from a DMH-funded community alternative to institutionalization, the hospital’s duty to seek alternatives to institutionalization includes at a minimum some timely and meaningful dialogue between hospital staff and community program staff regarding the feasibility of return to that community program.