ADOPTION OF FLORA
(and a companion case[1]).

No. 02-P-1373.

Plymouth. October 7, 2003. - January 15, 2004.

Present: GREENBERG, DREBEN, & MCHUGH, JJ.

*Parent and Child,* Care and protection of minor, Adoption, Dispensing with parent's consent to adoption. *Minor,* Care and protection, Adoption, Visitation rights. *Adoption,* Care and protection, Dispensing with parent's consent, Visitation rights. *Practice, Civil,* Care and protection proceeding, Assistance of counsel.

The evidence at a proceeding to terminate the mother's rights to her son supported the judge's conclusion that the mother's drug relapses and failures to take advantage of services offered by the Department of Social Services (department) rendered her unfit to take care of the child, and that the department's plan for the child's adoption was in his best interest; moreover, the judge did not abuse his discretion in not ordering posttermination visitation with the child. [338-339]

At a proceeding to terminate the mother's rights to her daughter, the failure of the daughter's counsel to follow the appropriate guidelines for appointed counsel in State intervention cases and to present the daughter's wishes required remand of the case for a determination whether it was in the daughter's best interest to have her mother's parental rights terminated and, if so, for a determination whether it was in the daughter's best interest to have posttermination visitation with her mother. [339-342]

There was clear and convincing evidence at a proceeding to terminate the mother's rights to her daughter to support the judge's finding of the mother's unfitness [342-343], and the mother failed to demonstrate that her counsel provided ineffective assistance or that she had no opportunity to challenge the propriety of the daughter's placement with her father [343].

PETITIONS filed in the Plymouth County Division of the Juvenile Court Department on January 6, 2000.

The cases were heard by *John P. Corbett,* J., and a motion for a new trial, filed on January 16, 2003, was also heard by him.

*Sherrie Krasner* for the mother.

[1]Adoption of Neil. Both names are pseudonyms.

*Margaret M. Geary* for Flora.

*Brian Pariser,* Assistant Attorney General, for Department of Social Services.

*Henry C. Porter,* for Neil, submitted a brief.

DREBEN, J. After Flora (born on December 9, 1991) and Neil (born on December 19, 1999) had been in foster care for almost fifteen months, the Department of Social Services (department) moved to amend care and protection petitions it had previously filed so as to terminate the rights of the children's parents.[2] See G. L. c. 119, § 26.[3] Decrees entered on April 5, 2002, terminating the parental rights of the children's mother and of Neil's father. Although the department's petition originally sought to terminate the rights of Flora's father, on the third day of trial, he and the department entered into a stipulation, approved by the judge, suspending termination proceedings as to him in return for his agreeing to certain conditions under which Flora would be placed in his home.

Before us are appeals by the mother and Flora from the decrees terminating the mother's parental rights.[4] The mother claims that the evidence is insufficient to find her unfit, that she did not have an opportunity to litigate the proposed placement of Flora with her father, and that the judge erred in not ordering posttermination visitation with both children. She also appeals from the denial of her motion for a new trial based on ineffective assistance of her trial counsel.

Flora contends that the department did not, as required, prepare an adoption plan for her and that the trial judge failed to address Flora's manifest interest in ongoing contact with her

---

[2]The petitions also related to a third child (born on December 13, 1985), who is not involved in this appeal. The three children have the same mother but each has a different father.

[3]General Laws c. 119, § 26(4), provides in part that the department shall file a petition, or a motion to amend a petition, "to dispense with parental consent to adoption . . . [if] the child has been in foster care in the custody of the state for 15 of the immediately preceding 22 months."

[4]Although Flora's trial counsel did not file a timely appeal from the decree and opposed the mother's motion for a new trial, her appellate counsel was granted permission by a single justice of this court to appeal from the termination decree. Flora also filed a timely appeal from the denial of the mother's motion for a new trial.

Neither Neil nor his father has appealed from the termination decree.

mother. Thus, she argues, termination should not have been ordered, and in any event, it was error not to order posttermination visitation. We affirm the decree terminating the mother's parental rights with respect to Neil, but, based on Flora's appeal, we vacate the decree as to Flora and remand the matter to the trial judge for additional findings as to whether termination is in Flora's best interest and, if so, whether posttermination visitation should be ordered.

1. *Proceedings below and facts found by the trial judge.* Temporary custody of the children was awarded to the department on January 6, 2000. Some six months later, the mother stipulated that the children were in need of care and protection and should continue in the temporary custody of the department. In December, 2000, she entered into a second stipulation agreeing that the children should be placed in the permanent custody of the department. Neil's father joined in both stipulations.

a. *March 23, 2001, findings.* After holding colloquies with the mother and Neil's father and concluding that their grant of custody to the department had been made voluntarily, the judge, relying on the stipulations and exhibits admitted without objection,[5] found by clear and convincing evidence that the mother and the fathers of the children were unable to provide minimally acceptable care of their children. He also found that the department's plan of permanent custody best served the interests of Flora, Neil, and the third child.[6]

His findings included the following. The mother, who was born on July 27, 1969, had a long history of substance abuse, having used cocaine since the age of seventeen. Her attempts at detoxification were unsuccessful.[7] In October, 1999, seven months pregnant and fearing she might hurt the baby, the mother

[5]Other than the colloquies, it does not appear that there were any live witnesses at the December, 2000, trial.

[6]The fathers of Flora and of the third child (see note 2, *supra*) failed to appear at the permanent custody trial on December 13, 2000.

[7]The judge recounted that the department in 1994, and again in 1995, found that the mother's drug use placed the children at risk of neglect, and that the mother admitted that her drug use affected her ability to parent her children. In 1994, after she admitted herself for detoxification at Brockton Hospital, an abuse and neglect report was filed and supported concerning Flora and the mother's older son, see G. L. c. 119, §§ 51A, 51B, alleging that the mother had not had electricity, heat, and hot water for three weeks. At that time, the

went to Catholic Charities admitting that she was addicted to cocaine. She, however, failed to attend sessions for individual and group treatment, and services were discontinued. On December 19, 1999, Neil was born, testing positive for cocaine. After his birth, the mother agreed to enter a residential drug treatment facility, but she left after fifteen days. On January 6, 2000, the department filed care and protection petitions, and the children were removed from the mother's home and placed in the temporary custody of the department.

From January 10 to the second week of February, 2000, the mother failed to make her whereabouts known to the department and missed meetings with her social worker and two visits with the children. She tested positive for drugs in March and June, 2000, and was not consistent in attending her counseling sessions or her outpatient treatment visits. Nevertheless, as of September 13, 2000, the department's plan was reunification with the children. Unsupervised visitation was increased to include overnight visits. On two occasions, the mother left Flora unsupervised with her father in violation of her service plan although she knew that all such visits had to be coordinated through the department. In November, the mother failed to take a random urine screen, and in December, a screen came back positive for marijuana. During this period her third child was arrested for possession of marijuana.

In determining the mother to be unfit, the judge laid stress on the mother's "persistent pattern of substance abuse and relapse and her overall shortcomings as a parent." He noted, in particular, the recent arrest of the third child for possession of drugs and the mother's permitting Flora's father to have access to Flora without the department's consent.

b. *April 5, 2002, findings after termination trial.* The judge who had issued the March, 2001, findings also presided over the termination trial. The evidence consisted of the judge's previous findings and exhibits, as well as additional exhibits and

mother admitted to using four to five bags of cocaine a day and had done so during the previous two to three years. In 1995, the mother was again "detoxed" as a result of a suicide attempt involving cocaine and over-the-counter drugs. Despite this history, in 1997, the department closed its case because the mother had failed to participate in services and the level of risk to the children was low.

testimony. Incorporating his previous findings, the judge referred to the mother's continued drug use and her failure to remain in a residential treatment facility, her failure to keep consistent contact with her social worker, her missed visits with her children, and her failure to find work. He noted that she did not recognize the deleterious effect on her children of her having been subjected to domestic violence. The mother also failed to appear at the last day of trial.[8]

2. *Termination and visitation as to Neil.* The findings taken as a whole support the judge's conclusion that the mother's shortcomings and the plan for adoption with respect to Neil warrant termination of her parental rights. The judge specifically found that Neil has special needs and suffers delays in speech and gross motor skills. The mother's drug use while pregnant clearly contributed to Neil's delayed maturation and later difficulties. Neil had never lived with his mother except for portions of the week during the brief time when visits were increased. Since June, 2001, the mother had failed to participate in his "Early Intervention" program.

In view of Neil's special needs and young age, the judge could properly determine that there was clear and convincing evidence that the mother's drug relapses and failures to take advantage of department services rendered her unfit to take care of him. His finding that the department's plan for Neil's adoption was in his best interest is warranted. Neil is young — just four years old. The department's adoption plan is to recruit a family with a similar cultural background willing to cope with his special needs.

The mother has also not shown an abuse of discretion by the trial judge in not ordering posttermination visitation with Neil. In ordinary circumstances, as stated in *Adoption of Vito*, 431 Mass. 550, 562 (2000), "adoption is meant to sever most enforceable obligations involving the biological parents with the child." There is no suggestion here that Neil needs such visitation "to assist [him] as he negotiates [at his young age] the

---

[8]The judge, in his denial of the mother's motion for a new trial, rejected her claim that she had not been informed of the date.

tortuous path from one family to another." *Id.* at 565. The family he has known since birth is his foster family and not his biological one.

3. *Termination and posttermination visitation as to Flora.* Flora was represented by counsel; he did not, however, advocate for her wishes at trial. Although counsel did not have the benefit of *Care & Protection of Georgette*, 439 Mass. 28 (2003), and thus may not have been aware that he should have followed the 1999 standards of the Committee for Public Counsel Services that apply to appointed counsel in State intervention cases, we are influenced by those standards in deciding Flora's appeal.

The Supreme Judicial Court has determined that those guidelines, set forth in *Georgette, supra* at 39-41, should apply until action by the court after study by the committee on the rules of professional conduct. *Id.* at 45. The standards here relevant are:

> "(a) Child's counsel should elicit the child's preferences in a developmentally appropriate manner, advise the child and provide guidance.
>
> "(b) If counsel reasonably determines that the child is able to make an adequately considered decision with respect to a matter in connection with the representation, counsel shall represent the child's expressed preferences regarding that matter."

*Id.* at 39-40, quoting from Committee for Public Counsel Services Assigned Counsel Manual, Standard 1.6 of the Performance Standards Governing the Representation of Children and Parents in Child Welfare Cases (1999).[9]

Counsel's failure to follow these guidelines and to present Flora's wishes, together with our review of the record, lead us to conclude that despite the failure of counsel to raise the issues

[9]The standard also provides options for counsel, including the right to request a guardian ad litem, in the situation where the child is not able to make an adequate decision and counsel believes that the child's expressed preferences would place her at risk of substantial harm. See *Care & Protection of Georgette, supra* at 40-41.

of termination and posttermination visitation,[10] Flora's best interests weigh in favor of our remanding these matters for further consideration by the Juvenile Court. See *Adoption of Terrence*, 57 Mass. App. Ct. 832, 839 (2003).

Although there was evidence at trial that Flora was emotionally attached to her mother and enjoyed her visits, much of the evidence concerning their good relationship was buried in the voluminous reports of the department and of the court investigator. Flora's trial counsel, who represented both children, never advised the judge of Flora's strong interest in maintaining contact with her mother. To the contrary, he did not call Flora as a witness, and his examination of the mother was extremely hostile — directed entirely to the mother's faults. He did not refer at any time to the abundant and uncontested evidence of the significant bond between Flora and her mother, and he did not call as witnesses the persons who had supervised visits and who clearly believed that Flora loved and looked forward to the visits with her mother.[11] He also did not point to the evidence indicating that Flora's behavior deteriorated when she was deprived of such visits.

The judge's findings and conclusions with respect to Flora, particularly those applying the statutory factors set forth in G. L. c. 210, § 3(c), do not reflect this favorable evidence. Thus the judge found that § 3(c)(iii), set forth in the margin,[12]

---

[10]We recognize that ordinarily issues not raised at trial are not considered on appeal absent special circumstances, see *Adoption of Gregory*, 434 Mass. 117, 120 n.1 (2001); see also *Adoption of Mary*, 414 Mass. 705, 711-712 (1993), but we think there are such special circumstances here.

[11]These individuals filed affidavits in connection with the mother's motion for a new trial.

[12]General Laws c. 210, § 3(c)(iii), as amended by St. 1999, c. 6, § 4, states that a court should consider whether

"(iii) a court of competent jurisdiction has transferred custody of the child from the child's parents to the department, the placement has lasted for at least six months and the parents have not maintained significant and meaningful contact with the child during the previous six months nor have they, on a regular and consistent basis, accepted or productively utilized services intended to correct the circumstances."

applies, and that,

> "while [the mother] has visited her children, the visitation has been sporadic and not consistent and does not constitute significant and meaningful contact with the children during the previous six months . . . ."

He also found that § 3(c)(vii), set forth in the margin,[13] applies, stating that,

> "because [the mother's] failure to address her many issues during this period of time, the absence of [the mother] from [Flora's] daily life for such an extended period, the child has expressed that she wishes to be with others besides her mother, namely her brother and/or her biological father, the forced removal of the child from the caretaker would likely cause serious psychological harm to the child and most significantly, [the mother] lacks the capacity to meet the special needs of [Flora] upon removal."

The judge's discussion about the psychological harm to Flora by forced removal is difficult to explain, as the relationship between Flora and her foster mother had seriously deteriorated, and the foster mother had given notice to the department that Flora had to leave her home by October 19, 2001.

We have grave doubts whether the judge would have made his findings as to visitation and removal if Flora's counsel, in accordance with the standards of the Committee for Public Counsel Services, had brought to the fore the evidence which reflected her wishes. Moreover, Flora's counsel's failure to seek visitation is inexplicable. Even the judge in his findings on the motion for a new trial indicated that "visits, by everyone's account, went well."

---

[13]General Laws c. 210, § 3(c)(vii), as amended by St. 1999, c. 3, § 17, states that a court should consider whether,

> "(vii) because of the lengthy absence of the parent or the parent's inability to meet the needs of the child, the child has formed a strong, positive bond with [her] substitute caretaker, the bond has existed for a substantial portion of the child's life, the forced removal of the child from the caretaker would likely cause serious psychological harm to the child and the parent lacks the capacity to meet the special needs of the child upon removal."

There is nothing in the record suggesting that the father is averse to having the mother visit. At trial, he explained that his prior lack of contact with Flora was because he did not wish to interfere with the mother's efforts to keep the children. The mother's relationship with the father and his new wife also seem cordial, as evidenced by the mother's leaving Flora with them during the period when she had overnight unsupervised visits. This amicable relationship was also confirmed by the mother in her trial testimony.

Although Flora is with her father, he is not free to allow visitation. The stipulation between the department and the father permitting placement in his home provides that he "will not allow any contact between [Flora and her mother] either directly or indirectly without the prior consent of the [department]." This provision obviously discourages visitation. In view of the judge's previous criticism of the mother for permitting visitation with the father, it is highly unlikely that the father will take any steps to encourage visitation with the mother.

Although the father's counsel indicated at trial that the father was in favor of termination of the mother's parental rights so that his present wife could adopt Flora, there was no evidence directly from the father supporting this statement or evidence that his new wife, who has four children of her own, has such an intention. Moreover, since Flora is now twelve and hence of an age to have a final say as to whether she should be adopted, see G. L. c. 210, § 2,[14] her wishes as to termination, as well as visitation, should be considered on remand.[15] We note that even if a parent is found to be unfit, there are some situations in which the child's best interest may be served without a decree of termination. See *Adoption of Vito*, 431 Mass. at 568, n.28.[16]

4. *Mother's appeal.* Although it is clear that the mother has deep affection for her children, has good intentions, and has

[14]The first part of that statute provides: "A decree of adoption shall not be made . . . without the written consent of the child to be adopted, if above the age of twelve . . . ."

[15]If her views remain as expressed in her motion to the single justice for leave to appeal, Flora wishes to have her mother continue to be her parent, even if she lives with her father.

[16]The judge, of course, is not to be faulted for counsel's failure to put forward Flora's wishes.

repeatedly tried to overcome her drug addiction, she has been unable to do so. There was evidence before the judge that her failure did in fact affect the children, and, indeed, in her stipulations, she acknowledged that she could not adequately care for them. The finding of unfitness as to Flora is supported by clear and convincing evidence.[17] We have already discussed the mother's appeal with respect to Neil. (See part 2 of this opinion.)

The mother's other appellate claims do not require a new trial. Our review of her counsel's performance at trial shows no lack of diligence and does not support the mother's claim of ineffective assistance of counsel. Her contention that she had no opportunity to challenge the propriety of the placement with the father rings hollow because she failed to appear at the last day of trial, her trial testimony indicated that she did not oppose such placement, and she left Flora with her father when she had unsupervised visitation. We need not discuss the mother's claims as to termination and posttermination visitation, as Flora's interest in those matters is paramount, and we have decided that that interest requires a remand.

Accordingly, the decree terminating the parental rights of the mother with respect to Neil is affirmed. The finding of unfitness of the mother as to Flora is affirmed. To the extent that the decree terminates her rights as to Flora, it is vacated, and the matter is remanded to the Juvenile Court for a determination whether it is in Flora's best interests to have her mother's rights terminated and for a determination whether it is in Flora's best interests to have posttermination visitation. The denial of the mother's motion for a new trial is affirmed.

*So ordered.*

---

[17]Neither of the children contests the finding of unfitness of the mother. The most glaring example of the effect of the mother's drug addiction previously mentioned in note 7, *supra*, occurred in 1994 when the mother continued to use drugs while the family was without electricity, heat, or hot water. The judge could also attribute the children's missing significant amounts of school in 1999 to the mother's drug addiction.