## ADOPTION OF NANCY
### (and a companion case[1]).

No. 03-P-558.

Middlesex. September 8, 2003. - June 4, 2004.

Present: LENK, SMITH, & DUFFLY, JJ.

Further appellate review granted. 442 Mass. 1107 (2004).

*Adoption,* Care and protection, Dispensing with parent's consent. *Parent and Child,* Care and protection of minor, Dispensing with parent's consent to adoption, Custody. *Minor,* Adoption, Care and protection, Custody. *Evidence,* Child custody proceeding.

The judge in a termination of parental rights case properly ruled that the father was currently unfit, where there was solid evidentiary support for the judge's findings that the father had a serious alcohol dependency problem and that it affected his care and treatment of his two daughters [255-257]; nevertheless, the evidence did not rise to the level of clear and convincing proof needed to terminate the father's parental rights [257-259].

PETITION filed in the Ayer Division of the Juvenile Court Department on September 25, 1998.

The case was heard by *Martha P. Grace, J.*

*Andrew R. Gustafson* for the father.

*Garry M. O'Brien* for the children.

*Timothy R. McGuire,* Assistant Attorney General, for Department of Social Services.

SMITH, J. Following decrees of the Juvenile Court granting permanent custody of Nancy and Rachel to the Department of Social Services (department) and terminating the parental rights of the mother and father, the father appeals, claiming that the judge failed to establish the required nexus between the father's alcohol dependency and his neglect of the children. The father also contends that the judge improperly concluded that termination of the father's parental rights was in the best interests of the children. The children do not dispute the finding of the

---

[1]Adoption of Rachel. Both names are pseudonyms.

father's current unfitness, but contest the termination of his parental rights.[2] The mother does not appeal.

1. *Facts*. At trial, six witnesses testified, and twenty-one exhibits were introduced in evidence. We briefly summarize the judge's findings.

The father is disabled and has received Social Security disability insurance benefits since 1987. Nancy was born on August 23, 1990, and Rachel was born on September 4, 1991. The mother and father were married in May, 1991. In 1997, the mother left the father, claiming that the father had physically abused her. She did not take Nancy or Rachel with her, but left them in the father's care.

The father is an alcoholic, and most of the testimony and exhibits centered on his ongoing alcoholism. The department first became aware of the family in February of 1998 when a G. L. c. 119, § 51A, report was filed alleging that the father was in a severely intoxicated condition and expressing concern about his ability to care for his children since his wife left him. The allegations were supported, and the case was opened for assessment and services.

On September 25, 1998, the department filed an emergency care and protection petition alleging neglect of Nancy and Rachel. Both girls were removed, and services were put in place. The father complied with the services, and the children were placed back with the father in November of 1998. They remained with the father for almost one year. During that period, the father apparently had ceased drinking as shown by his negative random urine screens. However, the father relapsed and started drinking again in October of 1999, and Nancy and Rachel were, once again, removed from the father's care.

Although the judge found that the father was an adequate caretaker when sober, the judge's findings, which are supported by the evidence, are replete with episode after episode of the father leaving the children with inappropriate caretakers while the father became intoxicated. Further, the father had a persistent

---

[2]The children did not file a notice of appeal, but their arguments in their brief before this court are consistent with those of the father in regard to the termination of the father's parental rights. See *Adoption of Stuart*, 39 Mass. App. Ct. 380, 380 n.2 (1995).

pattern of entering into detoxification programs and then returning to periods of substance abuse. For example, in 1999, the father was admitted to the Leominster Detoxification Center (Center) four times in an eight-month period. In the year 2000, he attended the Center on three occasions.

On June 10, 2000, the father signed a stipulation agreeing to comply with his service plan. Some of the required tasks in that plan included the following: that he refrain from drinking any alcohol; that he seek inpatient alcohol treatment and pursue residential treatment such as a half-way house program; that he meet with his social worker monthly; and that he identify an Alcoholics Anonymous (AA) program sponsor. As of June 26, 2000, the father had not identified his AA sponsor or provided verification to his social worker of daily AA attendance.

On August 3, 2000, which was a scheduled trial date, the father signed another stipulation, this time agreeing to be admitted to a detoxification center by August 11, to participate in aftercare, and to comply with his service plan. The father entered a program at AdCare Hospital in Worcester on August 11, 2000, but left that program within one week. The father attended three programs during the period of August 11, 2000, through September 22, 2000. From September 22, 2000, to October 26, 2000, the father was not in any treatment program. From June 16, 2000, through October 15, 2000, the father spent only thirty out of one hundred and twenty days in treatment. A "clinical worker" at the Center did not recommend the return of the father's children to him unless he completed a long-term alcohol treatment program. At the time of trial, the father had never participated in any long-term program.

Upon their removal from the father's custody in October of 1999, the children were placed together in the same foster home. Subsequently, Rachel was removed from the foster home because of inappropriate behavior with other children in that home.

A service plan was drawn up for the father in November of 1999, which provided for supervised visitation once a month with Nancy and Rachel. The father did not visit with his daughters from January, 2000, through the end of May, 2000. The father never consistently asked for visits with his daughters,

and he did not contact the department to inquire about his children. Both Nancy and Rachel have expressed a desire to continue visitation with their father in the future.

At the time of the trial, Nancy was in the same foster home where she had been placed in October of 1999. The foster home is a single-family home in which she has her own room. Nancy does not wish to be adopted, but rather prefers to have her foster parents designated as her guardians. The judge approved that goal for Nancy.

After being removed from the foster home she shared with Nancy, Rachel was placed in a respite home and subsequently in a specialized foster home. Rachel has been diagnosed with depression and attention deficit hyperactivity disorder. At the time of trial, the department's plan for Rachel was long-term substitute care, which would change to adoption when she became stabilized. The judge found the department's plan for Rachel to be appropriate, considered her needs as well as her stated desires, and was in her best interests.

2. *Discussion.* The father argues that the Juvenile Court judge ignored certain facts and failed to establish the requisite nexus between the father's alcohol dependency and his neglect of the children. The father also claims that the judge improperly concluded that termination of the father's parental rights was in the best interests of the children.

a. *Nexus between alcohol dependency and unfitness.* Before a judge may award permanent custody of a child to the department, the judge must find, by clear and convincing evidence, that the biological parent is currently unfit to further the welfare and best interests of the child. G. L. c. 210, § 3. See *Custody of Two Minors,* 396 Mass. 610, 619 (1986); *Adoption of Kimberly,* 414 Mass. 526, 528-529 (1993). Parental unfitness means "grievous shortcomings or handicaps" that put the child's welfare "much at hazard." *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption,* 367 Mass. 631, 646 (1975). *Adoption of Katharine,* 42 Mass. App. Ct. 25, 28 (1997). "Endangerment of the child from abuse, neglect, or other activity harmful to the children must be in the picture." *Ibid.*

"Generally, no one factor is determinative and the judge

should weigh all the evidence." *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 290 (1987) (footnote omitted). "The judgment must analyze the parent's character, temperament, capacity and conduct in relation to the particular child's needs, age, affections and environment." *Adoption of Carlos*, 413 Mass. 339, 348 (1992). Moreover, the judge's findings must be specific and detailed enough to demonstrate "that close attention has been given the evidence and that the necessity of removing the child[ren]" from their parent "has been persuasively shown." *Custody of a Minor (No. 1)*, 377 Mass. 876, 886 (1979). *Care & Protection of Martha*, 407 Mass. 319, 327 (1990). A judge may not rely on stale information for a current determination of unfitness. *Petitions of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 18 Mass. App. Ct. 120, 126 (1984). We do not disturb a judge's findings absent a showing that they are clearly erroneous. *Care & Protection of Martha*, 407 Mass. at 327. *Adoption of Peggy*, 436 Mass. 690, 701, cert. denied sub nom. *S.T.* v. *Massachusetts Dept. of Social Servs.*, 537 U.S. 1020 (2002).

Here, there was solid support for the judge's findings that the father has a serious alcohol dependency problem and that it affected his care and treatment of his two daughters. The evidence of continuing and recurring relapses indicated that his alcohol dependency would continue. The evidence also showed that the father did not avail himself of the services the department repeatedly offered him. For example, the judge found that the father had not cooperated with the department's strong suggestion that he enter long-term treatment. There was indeed evidence presented of the father's alcohol dependency and refusal to enter long-term treatment beyond November of 1998, contrary to the father's claim.

The judge also found that, although the father was an adequate caretaker when sober, he would leave the girls unsupervised when intoxicated. The father admitted that, on one occasion, he left the girls in the care of a person who was drunk, and the girls wandered away from home, jumped a fence, and were in the neighbor's swimming pool unsupervised.

Although it is true that an alcohol habit, without more, does

not translate automatically into legal unfitness to act as a parent, see *Adoption of Katharine*, 42 Mass. App. Ct. at 33-34, the judge's findings here reflect a long and continued history of the father's negligent care of his daughters when he was using alcohol. The judge made several findings about the father's progress and attendance at treatment programs; however, "good intentions are not alone sufficient indicia of ability adequately to care for children." *Custody of Two Minors*, 396 Mass. at 620. We conclude that the judge's findings were not clearly erroneous, did not rely on stale information, and adequately stated the nexus between the father's alcohol dependency and his unfitness as a parent. Thus, the judge did not commit error in ruling that the father is currently unfit.

b. *Termination of parental rights.* The father contends that the judge committed error in terminating his parental rights because such termination was not in the children's best interests.

An award of custody in a care and protection proceeding, which primarily addresses current fitness, is reviewable every six months under G. L. c. 119, § 26. See *Adoption of Carlos*, 413 Mass. at 350. By contrast, the focus of a termination proceeding is whether "it would be in the best interests of the child[ren] for all legal relations [with the parent] to be ended" (emphasis omitted). *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 392 Mass. 738, 741 (1984), quoting from *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984). See *Adoption of Helen*, 429 Mass. 856, 863 (1999). When all legal relations are to be ended, a parent has no right to further review under G. L. c. 119, § 26. *Adoption of Gabrielle*, 39 Mass. App. Ct. 484, 489 n.8 (1995). Therefore, before taking the "extreme step [of allowing a petition to dispense with parental consent to adoption]. . . it must be shown by clear and convincing evidence that the parent's unfitness to assume parental responsibility is such that it would be in the best interests of the child for all legal relations to be ended." *Petition of the Dept. of Social Servs. to Dispense With Consent to Adoption*, 391 Mass. 113, 119 (1984).

Though "the question of what is in the best interests of the child . . . is bound up with the determination of unfitness,"

*Adoption of Katharine*, 42 Mass. App. Ct. at 28, a finding of current parental unfitness does not require termination of the parent-child legal relationship. *Adoption of Carlos*, 413 Mass. at 350. *Adoption of Vito*, 431 Mass. 550, 568 n.28 (2000). *Adoption of Flora*, 60 Mass. App. Ct. 334, 342 (2004) ("[E]ven if a parent is found to be unfit . . . the child's best interest may be served without a decree of termination"). Further, there is nothing in G. L. c. 119, or in G. L. c. 210, that precludes a judge from terminating a mother's parental rights, but not the father's, upon appropriate findings. *Adoption of Willow*, 433 Mass. 636, 642-650 (2001).

Although the evidence did support the judge's conclusion of the father's current parental unfitness, it did not rise to the level of clear and convincing proof needed to terminate the father's rights. Compare *Adoption of Harriet*, 29 Mass. App. Ct. 111, 113-114 (1990). Here, the judge concluded that it was in the best interests of Nancy and Rachel to terminate the father's parental rights but failed to make specific findings as to how the best interests of the children would be served by that termination, or what effect separation from their father would have on the children over their long term lives. See *ibid.* See also *Adoption of Ramona, post* 260, 266 (2004). Indeed, to the extent that the judge did address the childrens' best interests, those findings do not support termination.[3] See *Adoption of Ramona, supra* at 266. Further, considering each child's age at the time of the decree (Nancy was eleven, Rachel was ten), their wishes as to the extreme step of the termination of their father's parental rights should have been ascertained and considered. See *Adoption of Flora*, 60 Mass. App. Ct. at 339-340; *Adoption of Ramona, supra* at 266. We note that Nancy specifically rejected adoption.[4]

Rachel is in long-term care, and the department's own plan for Rachel reflects that she is not currently sufficiently stable to be an appropriate candidate for adoption. We note that there is

---

[3]We note that there are cases in which the findings as to the unfitness of a parent are equally relevant to, and would fully support, the decision to terminate parental rights.

[4]Instead of adoption, Nancy stated that she wanted her foster parents to be her guardians. There is nothing in the record that demonstrates that there has been any legal proceedings establishing a guardianship.

nothing in the findings or in the evidence to indicate when Rachel is likely to become stable enough for adoption. There is no evidence that she has bonded with those adults presently taking care of her.

Therefore, in view of the record, we hold that it was error to terminate the father's parental rights. Accordingly, so much of the decrees as determines the father to be unfit is affirmed. We vacate that portion of the decrees that terminates the father's parental rights.

*So ordered.*