## Adoption of Ramona
### (and two companion cases[1]).

No. 03-P-480.

Worcester. September 8, 2003. - June 4, 2004.

Present: Lenk, Smith, & Duffly, JJ.

*Adoption,* Dispensing with parent's consent. *Parent and Child,* Adoption, Dispensing with parent's consent to adoption. *Minor,* Adoption. *Evidence,* Child custody proceeding.

A Juvenile Court judge's findings in a termination of parental rights case regarding the mother's neglect of her daughter were sufficiently specific and detailed to support the judge's conclusion that the mother was currently unfit to parent the child [262-263] and that termination of her parental rights was in the child's best interests [263-265].

This court vacated a Juvenile Court judge's decrees terminating the mother's parental rights as to her two sons and remanded the matter for further proceedings where, even if this court were to assume that the mother's current unfitness to parent each boy had been established by clear and convincing evidence, despite the lack of detail and specificity in the judge's findings on this point and the judge's reliance on stale evidence [265-266], the question remained whether termination of her parental rights was in the boys' best interests, given that each boy was unlikely to be adopted and remained bonded with his mother, and given that each boy had expressed a determination not to be adopted [266-267].

Petitions filed in the juvenile session of the Fitchburg Division of the District Court Department on May 7, 1998.

After transfer to the Worcester Division of the Juvenile Court Department, the cases were heard by *Jan L. Najemy,* J.

*Andrew L. Cohen,* Committee for Public Counsel Services, for Curt & another.

*John T. Ouderkirk, Jr.,* for the mother.

*Margaret M. Geary* for Ramona.

*Brian Pariser* for Department of Social Services.

[1]Adoption of Curt and Adoption of Sam. All the children's names in this opinion are pseudonyms.

LENK, J. The biological mother appeals from decrees entered pursuant to G. L. c. 210, § 3, terminating her parental rights as to the three youngest of her five children: Ramona, born on September 28, 1988, Curt, born on June 22, 1990, and Sam, born on April 18, 1991. At all relevant times since removal from her mother's care in early 1999, Ramona has been in the same preadoptive foster care setting, where she has flourished, and she wishes to be adopted by her foster mother. Accordingly, Ramona expresses reservation about her decree only insofar as it precludes posttermination and postadoption visitation between and among the siblings. Curt and Sam, neither of whom are in preadoptive homes nor wish to be adopted, join their mother in appealing their decrees, claiming in effect that it renders them legal orphans.

1. *Background.* The Department of Social Services (department) brought a care and protection proceeding pursuant to G. L. c. 119, § 24, in May, 1998, as to all five children,[2] who then ranged in age from seven to fifteen years old. The proceeding was brought following a number of G. L. 119, § 51A, reports clustered in a period of several months, showing the three youngest children running very seriously amok,[3] and their mother repeatedly neglecting them by leaving them either unsupervised, or inadequately supervised, by a boyfriend or one or both of the oldest two children. The five children were placed in the department's custody, but remained in their mother's care for almost a year until she was briefly incarcerated in early 1999.[4] They were then placed in various foster care settings and, in essence, have not been in their mother's care since that time.[5]

---

[2]Ted, born on June 15, 1983, Beth, born on September 4, 1985, and the three children who are the subject of this appeal: Ramona, Curt, and Sam.

[3]The incidents included the following: breaking into a school, knocking over computers and throwing books; throwing rocks at a babysitter; breaking into a car and causing damage; jumping into traffic and trying to grab or hit passing cars; tampering with a neighbor's lawn mower; stealing a flare gun and starting a brush fire; jumping from the roof of the family home onto the roof of another home; and climbing a neighbor's house with a ladder.

[4]The mother was incarcerated for thirty days for assault and battery committed upon a babysitter in 1998.

[5]At the time of trial, Curt was residing in specialized foster care. Sam was also in foster care.

In February of 2000, the mother stipulated that all of her children were in need of care and protection[6]; the permanency plan for the three youngest was changed to adoption later that year.[7] Trial took place over three days during the first three months of 2002, the decrees entered on June 26, 2002, and the judge's findings on October 4, 2002. The mother, Curt, and Sam jointly moved on November 20, 2002, for relief from judgment seeking (a) that the decrees dispensing with parental consent as to Curt and Sam be vacated on the grounds that, given their ages, they cannot be adopted without their consent, which consent they refuse to give; and (b) in the alternative, that new decrees enter adding provisions that the boys have posttermination and postadoption visits with the mother. The boys also moved for posttermination and postadoption sibling visitation. Their motions were supported by the boys' affidavits. After hearing, the judge without opinion denied the first two motions, but allowed the motion seeking sibling visitation.

On appeal, the mother contends that, as to all three children, the judge's findings of fact were based upon stale evidence and were insufficiently detailed to support the ultimate finding that she was, at the time of trial, unfit to parent each of the three children. The boys support this position as it concerns their mother's fitness to parent them and further contend, with the mother, that the evidence did not support the ultimate finding that it was in their best interests that the mother's parental rights be terminated. Finally, the mother and the boys maintain that the judge erred in failing to provide for posttermination and postadoption visitation between and among the mother and the boys.

2. *Unfitness to parent.* Faced with a petition to dispense with parental consent to adoption, a judge must first determine whether the parent is currently unfit to further the welfare and

---

[6]The evidence showed that the mother attended visits with each of her children regularly, if imperfectly, despite the fact she had a thirty to fifty minute drive in each direction from her home to visit them at their placements.

[7]The second oldest of the children, Beth, had unsupervised, overnight visitation with the mother for one year prior to trial. At trial, the department dismissed Beth from the petition to dispense with parental consent for adoption and articulated a goal for Beth of reunification with the mother. Beth was returned to the mother's care in June, 2002.

best interests of the children. *Adoption of Willow*, 433 Mass. 636, 644 (2001). See *Adoption of Gregory*, 434 Mass. 117, 125 (2001). A determination of parental unfitness must be child-specific; "the issue is the current fitness of the biological parents to further the welfare and the best interests of the *particular* child" (emphasis original). *Custody of a Minor*, 21 Mass. App. Ct. 1, 7 (1985).

In addition to Ramona's participation in certain of the 1998 behaviors occasioned by the mother's neglect as earlier detailed,[8] and Ramona's report of inadequate food, hygiene, and sleep while in the mother's care,[9] the judge found that, during an April, 2000, visit with the mother, Ramona became frightened by her mother's efforts to retrieve a car from Beth's father. Since her removal from her mother's care, Ramona's behavior in school had improved, and she had become involved in sports. Ramona's therapist opined that Ramona's behavior would regress were she to be returned to her mother's care. The judge also found that Ramona was happy in the foster home that she had lived in since she was removed from her mother's care and that Ramona did not wish to return to live with her mother. Ramona had expressed a preference to remain permanently in her foster home and to be adopted by her foster mother, who wishes to adopt her. These findings are sufficiently specific and detailed to allow us to ascertain which facts the judge considered and relied upon in determining that the mother was currently unfit to parent Ramona and that termination of the mother's parental rights was in Ramona's best interests. See *Custody of Eleanor*, 414 Mass. 795, 799 (1993); *Adoption of Willow*, 433 Mass. at 644-645.

The judge's findings with regard to the mother's current fitness to parent Curt and Sam, however, are considerably more sparse. The judge found that Curt's behavior regressed when the mother missed visits with him. The judge found that, during one visit between and among the mother, Beth, Curt, Ramona, and Sam, Sam kept to himself. These findings, even when viewed in conjunction with the 1998 behaviors occasioned by maternal neglect, fall short of what is necessary to sustain a

[8]See note 3, *supra*.
[9]See note 12, *infra*.

determination of current parental unfitness. We note that certain other findings relate additional facts, which might properly weigh in favor of a determination of unfitness, but those findings do not identify the child or children to whom the judge refers.[10] The findings as to Curt and Sam, then, are lacking in both detail and specificity, and neither demonstrate that the requisite close attention was given to the evidence nor show that the judge's determination of maternal unfitness was based upon consideration of all the relevant facts. See *Custody of Eleanor*, 414 Mass. at 799.

In addition to being child-specific, a determination of unfitness must be based on current evidence. While a judge may rely upon a parent's prior pattern of behavior in determining parental unfitness, the judge is required to assess whether a parent is currently unfit. *Adoption of Paula*, 420 Mass. 716, 730 (1995). See *Adoption of Carlos*, 413 Mass. 339, 348 (1992). This inquiry requires the judge to focus on the present. *Adoption of Paula, supra* at 731 ("A judge whose order will have the effect of irreversibly terminating the legal parent-child relationship must focus on the present circumstances of the parent and the child, taking into account recent positive gains, [if any] . . ."). Here, the bulk of the judge's findings as to the mother's unfitness to parent Curt and Sam rested upon events occurring more than two years prior to trial, even though recent evidence of the mother's parenting was available. For example, the mother had successful, unsupervised, overnight visitation with Beth prior to trial; by the time of trial, Beth was visiting with the mother almost daily; the department recommended reunification of Beth and her mother, and filed a motion to dismiss Beth from the petition, which was allowed. Recent evidence of the mother's participation in a parenting program, a nurturing program, and an anger-management program was also available.[11] It does not appear that such evidence was considered.

The lack of specific and current findings regarding the

---

[10]For example, it is not obvious that there is evidentiary support for the finding that "[d]uring April and May 2001, [the mother] was not in touch with the Department or her children."

[11]Those findings of the judge that were most current did not disclose the "grievous shortcomings" indicative of parental unfitness, see *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adop-*

mother's fitness to parent Curt or Sam is of particular concern because neither boy had a continuous placement, nor formed bonds with caretakers other than the mother since the time that he was removed from the mother's care. See *Adoption of Flora*, 60 Mass. App. Ct. 334, 341 (2004). Even if we were to assume, despite the aforesaid misgivings, that the mother's current unfitness to parent each boy had been established by clear and convincing evidence, the question remains whether termination of her parental rights would serve each boy's best interests. See *Adoption of Nancy, ante* 252, 257-258 (2004). In these circumstances, where their mother is the one person with whom they have an enduring parent-child relationship and each boy has voiced his opposition to being adopted, there is reason to think that terminating the mother's rights as to either boy might render them legal orphans. See *Adoption of Carlos*, 413 Mass. at 351. It is precisely because of the gravity and finality inherent in the termination of parental rights that we require trial judges who contemplate this "extreme step" to make specific and detailed findings that would warrant it. *Adoption of Gregory*, 434 Mass. at 126, quoting from *Adoption of Frederick*, 405 Mass. 1, 5 (1989).

3. *Best interests of the children.* A determination of parental unfitness is the first of two "cognate and connected" steps in the process of determining whether termination of parental rights should occur. *Petition of the New England Home for Little Wanderers to Dispense with Consent to Adoption*, 367 Mass. 631, 641 (1975). After ascertaining unfitness, the judge must determine whether the parent's unfitness is such that it would be in the child's best interests to end all legal relations between parent and child. See *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 391 Mass. 113, 119 (1984); *Adoption of Carlos*, 413 Mass. at 350-351. "[E]ven if a parent is found to be unfit, there are some situations in which the child's best interest may be served without a decree of termination." *Adoption of Flora*, 60 Mass. App. Ct. at 342.

*tion*, 367 Mass. 631, 646 (1975); instead, those findings describe the mother's noncompliance with some of the details of department service plans, including missing some counseling sessions without calling to cancel and failing to provide the department with documentation of her participation in services.

Ramona lived with her mother during a time when all five children were at home and when the mother's parenting skills were not at their strongest.[12] Moreover, Ramona bonded with her foster mother and did not maintain a bond with her mother. In view of Ramona's long placement and connection with her foster mother, her improvement in school and participation in sports, as well as the plan for her adoption, we are persuaded by Ramona's argument that the findings, taken as a whole, support the judge's conclusion that the evidence warranted termination of the mother's parental rights as to Ramona. The decree terminating the parental rights of the mother with respect to Ramona is affirmed.

The situation with Curt and Sam is quite different. At the time of trial, Curt and Sam were each almost of an age to prevent his own adoption, see G. L. c. 210, § 2,[13] and each expressed his determination not to be adopted. Each boy remained connected with his biological mother and neither had formed close bonds with other caretakers. The judge did not make findings regarding Curt's custodial preferences, and although the judge found that Sam wished to be adopted, this finding was not supported by the evidence and was clearly erroneous. See *Adoption of Gregory*, 434 Mass. at 126. The severing of parental rights must not take place "unless the child's present or future welfare demands it." *Adoption of Carlos*, 413 Mass. at 350. Absent here are findings that explain why it is in the best interests of Curt and of Sam to terminate their mother's parental rights, given that each boy is unlikely to be adopted and remains bonded with his mother. See *Adoption of Nancy*, *supra* at 258.

The decrees terminating the parental rights of the mother with respect to Curt and Sam are accordingly vacated, and the matter is remanded to the Juvenile Court for such further proceedings as are necessary and appropriate to determine forthwith the issue of parental fitness as to each boy and to

---

[12]The judge found that Ramona did not want to live with her mother because she felt that when she did live with her, she was always hungry, did not get enough food or sleep, and did not bathe or have clean underwear.

[13]"A decree of adoption shall not be made . . . without the written consent of the child to be adopted, if above the age of twelve . . . ." G. L. c. 210, § 2.

make requisite findings in connection therewith, all in a manner not inconsistent with this opinion. If the mother is found currently unfit to parent either or both boys, the judge shall determine and make requisite findings whether it is in such child's best interests to have the mother's parental rights terminated. Because Curt and Sam are old enough to have a final say as to their own adoptions, the wishes of each child as to termination should be considered in determining their best interests. See *Adoption of Flora*, 60 Mass. App. Ct. at 342. See also *Custody of a Minor*, 383 Mass. 595, 602 (1981).[14] Pending the further proceedings, custody is to remain with the department. The decree with respect to Ramona is affirmed.

*So ordered.*

---

[14]If, upon remand, the judge were to determine that the mother's parental rights should be terminated as to Curt or Sam, we also remand the question of posttermination visitation as to such child. The Supreme Judicial Court has held that a judicial order for postadoption contact may be warranted where the evidence points to "significant, existing bonds between the child and a biological parent," and if "no preadoptive family has yet been identified, and where a principal, if not the only, parent-child relationship in the child's life remains with the biological parent." *Adoption of Vito*, 431 Mass. 550, 563-564 (2000).