NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-303

ADOPTION OF OSBORN.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The mother and her son, Osborn, appeal from a decree of the Juvenile Court terminating the mother's parental rights.  Ample evidence supports the judge's determinations that the mother is currently unfit to parent Osborn and that her unfitness is likely to continue into the indefinite future, and the decree committing the child to the custody of the department.  Because there was insufficient evidence that it is in Osborn's best interests to terminate the mother's parental rights, however, we vacate the decree terminating the mother's parental rights, and remand for further proceedings on that issue.

Background.  At the time of trial, Osborn was ten years old.  When he was approximately three years old, he was diagnosed with autism, a receptive and expressive language

---

[1] A pseudonym.

delay, and sensory integration dysfunction.  He is still largely non-verbal and has not been fully toilet trained.  Despite these facts, the mother believes he has reached all his milestones on time.

The mother and Osborn had an extensive history with the Department of Children and Families (department) by the time Osborn was removed from the mother's care in late 2020, when he was eight.  Ultimately, Osborn was removed due to his failure to attend school, the condition of the home, the care the mother was providing, medical neglect, and the mother's mental health as it impaired her ability to meet Osborn's needs.

Since his removal, Osborn has never lived in a home setting with a foster family.  Instead, he has lived at various residential facilities.  Over time, staff and medical providers have helped improve Osborn's sleep schedule, diet, toilet training, and school attendance.  Even with this improvement, given Osborn's needs, an adoptive family would have to plan lifelong care for him.

During the time that the child was in a residential home, the mother consistently attended her weekly visits, though the mother struggled to comply with the department's action plans during this time.  The mother is a loving presence in Osborn's life, even though her own mental health issues prevent her from meeting his extensive care needs.

2

After trial in 2023, the judge found that Osborn was in need of care and protection, committed Osborn to the permanent custody of the department, and issued decrees terminating the mother's and any unknown or unnamed father's parental rights. The judge found that it was in the child's best interests to maintain contact with the mother. Accordingly, the judge also ordered that visitation between the mother and Osborn continue until further order of the court.

Discussion. Both the mother and Osborn argue that termination of the mother's parental rights was not in Osborn's best interests because it rendered him a legal orphan and he is not likely to be adopted.[2] The department's adoption plan for Osborn did not include an assessment of Osborn's likelihood of becoming adopted. At trial, however, an adoption social worker for the department testified that in 2022, the department matched seventy-four children with moderate to severe special

---

[2] The mother also argues that her due process rights were violated when the trial judge made a comment at sidebar before the close of the evidence that her unfitness, from what the judge had heard "thus far," was "not really a close call." Because the mother did not object to the trial judge's comments, however, she has waived this argument on appeal. See Adoption of Jacob, 99 Mass. App. Ct. 258, 270-271 (2021). In any event, it was not prejudicial given the overwhelming evidence of mother's unfitness. The mother is diagnosed with depression, anxiety, ADHD, bipolar disorder with delusions, and schizoaffective disorder, and her diagnoses impair her ability to meet Osborn's basic needs. Moreover, the mother conceded at oral argument that she was unfit and that she was not likely to become fit in the foreseeable future.

needs with the assistance of the Massachusetts Adoption Resource Exchange (MARE). Part of the department's plan of recruitment was to register Osborn with MARE. The judge found that the department's confidence in successfully locating an adoptive family for Osborn was credible, referencing the MARE statistics as support.

However, critical details were missing from the MARE statistics. For instance, it was unknown how many of the seventy-four children matched had "moderate" versus "severe" special needs, or how those terms were defined. The children's ages and the nature of their special needs were also unknown. The testimony of department workers supported that it was possible a child with significant medical issues might be adopted by a non-family member, but no family member was identified for Osborn and no witness testified that adoption was reasonably likely particularly given his age and needs. Nobody testified as to how many children are never adopted.

Osborn was ten years old at the time of trial. He is still largely non-verbal and not yet fully toilet trained. The judge's finding that Osborn has "severe developmental needs" and will need significant care throughout his life was supported by the record. Given Osborn's circumstances, the MARE statistics alone do not provide meaningful evidence to support a finding of Osborn's likelihood of adoption. Here, absent such findings and

4

where the record does not demonstrate a benefit to Osborn from terminating his mother's parental rights in the event that he is not adopted, it is unclear whether termination of the mother's parental rights would be in Osborn's best interests. See Adoption of Thea, 78 Mass. App. Ct. 818, 823-826 (2011) (vacating termination of mother's parental rights where child was almost eighteen years old and placed in long-term hospitalization unit, there was no identifiable posttermination plan, and evidence was insufficient that termination was in child's best interests); Adoption of Ramona, 61 Mass. App. Ct. 260, 266-267 (2004) (vacating termination of mother's parental rights absent findings explaining why termination was in children's best interests where they were unlikely to be adopted and remained bonded with mother). But see Adoption of Nancy, 443 Mass. 512, 517-518 & n.7 (2005) (termination appropriate where both children in "stable situations" and their "permanence and stability" would "be eased by termination" even though one child was "not presently a candidate for adoption"). We are mindful that "[t]he natural bond between parent and child should not be permanently severed unless the child's present or future welfare demands it." Adoption of Carlos, 413 Mass. 339, 350 (1992). "[E]ven if a parent is found to be unfit, there are some situations in which the child's best interest may be served without a decree of termination." Adoption of Flora, 60 Mass.

5

App. Ct. 334, 342 (2004).  Accordingly, we remand for further consideration of this issue.  Id. at 343.

Conclusion.  We affirm the portions of the decree adjudicating the mother to be currently unfit, determining that the child is in need of care and protection, and committing him to the custody of the department.  We vacate those portions of the decree that terminate the mother's parental rights.  On remand, the judge shall reconsider the termination portion of the decree and shall determine whether it is in Osborn's best interests to have his mother's parental rights terminated.  We wish to make clear that we express no opinion on this question, which remains committed to the sound discretion of the trial judge.  The current order for visitation shall remain in effect, subject to further action by the Juvenile Court.

So ordered.

By the Court (Rubin, Henry & Walsh, JJ.[3]),

Clerk

Entered:  April 14, 2025.

---

[3] The panelists are listed in order of seniority.